UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HUGUETTE ULYSSE** | : |
| Plaintiff, | : |
| v. | : |
| | :    **CASE NO.: 1:19-cv-01465 CJN** |
| **OFFICER STOKES, et al.** | : |
| Defendants. | : |

_____

### MEMORANDUM OF AUTHORITIES IN SUPPORT OF WMATA'S MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER

WMATA, a non-party in this litigation, with consent of Defendants, moves to quash the subpoena served upon it to appear and testify pursuant to Fed. R. Civ. P. 30(b)(6) regarding a topic list of twelve subjects. *See* Plaintiff's Attachment A to subpoena, attached hereto as Exhibit 1. The deposition is currently set for October 5, 2020. Discovery in this litigation was stayed and then reopened on August 1, 2020, with a discovery close date of November 6, 2020.

Under Rule 45, any party may serve a subpoena commanding a nonparty "to attend and testify" or to "produce designated documents." Fed. R. Civ. P. 45(a)(1)(A)(iii). A court may quash or modify the subpoena for a variety of reasons, including that the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A).

I. LEGAL STANDARD

A. **Motion to Quash**

The Federal Rules of Civil Procedure allow examination of a deponent concerning "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b). Pursuant to Fed. R. Civ. P. 45, a party may issue a subpoena to a non-party to attend a deposition. "No requirement of relevance is included in the text of Rule 45; however, it is settled that a subpoena is limited in scope by Rule 26(b)(1) of the Federal Rules of Civil Procedure." (citations omitted). *Coleman v. District of Columbia,* 275 F.R.D. 33, 36 (D.D.C. 2011). Rule 45(d)(1) provides that a "person" served a discovery subpoena may move either for a protective order under Rule 26(c) or for an order quashing or modifying the subpoena under Rule 45(c).

Rule 45 " 'requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden.' " *In re Micron Tech., Inc. Sec. Litig.,* 264 F.R.D. 7, 9 (D.D.C.2010) (*quoting Watts v. SEC,* 482 F.3d 501, 508 (D.C.Cir.2007)) "The text of Rule 45 makes quite clear that parties and attorneys who issue subpoenas have an affirmative duty to prevent undue burden or expense to the persons subject to the subpoena," *Millennium TGA, Inc.,* 286 F.R.D. 8, 11 (D.D.C. 2012) (*citing* Fed.R.Civ.P. 45(c)(1)).

To determine the question of whether a discovery request is an undue burden, the court should review several factors, including:

> "whether the discovery is unreasonably cumulative or duplicative; whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive; and whether the burden or

> expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *Watts,* 482 F.3d at 509 (citations and quotation marks omitted).

*In re Denture Cream Products Liability Litigation*, 292 F.R.D. 120, 123 (D.D.C.,2013)

Rule 45(c)(3) provides that the court may quash or modify the subpoena if it is unreasonable and oppressive. *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 171-72 (D.C. Cir. 1998).

B. **Motion For Protective Order**

If "the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive" the court may limit the scope of discovery, including subpoenas. Fed. R. Civ. P. 26(b)(2)(C)(i); *Kappel v. Garris*, 2020 WL 707123, at *2 (D.S.C., 2020).

Rule 26(c)(1) authorizes district courts, upon a showing of "good cause" by "[a] party or by the person from whom discovery is sought" to make any order which justice requires to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only by court order; . . . (H) requiring that the parties simultaneously file specified documents or

information in sealed envelopes, to be opened as the court directs." Fed. R. Civ. P. 26(c)(1)(A) through (H).

The district court must balance "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena. *Heat & Control, Inc. v. Hester Industr., Inc.*, 785 F.2d, 1017, 1024 (Fed. Cir. 1986).

### C. Rule (30)(b)(6) Deposition

The time and effort to prepare and produce a witness, or witnesses, under Rule 30(b)(b) are not inconsequential. When a party notes a deposition pursuant to Rule 30(b)(6) the corporation or entity named in the deposition notice has several duties required of it. *Alexander v. Fed. Bureau of Investigation,* 186 F.R.D. 137, 139-41 (D.D.C.1998). The entity must designate a person or persons knowledgeable on the topic or topics. *Id.* The entity must prepare the deponent(s) so that they can testify on matters within their personal knowledge, and, also those matters "reasonably known by the responding entity." *Id.; U.S. ex rel Fago v. M & T Mort. Corp.,* 235 F.R.D. 11, 23 (D.D.C.2006).

### III. FACTUAL BACKGROUND

Plaintiff has filed claims against two individual MTPD officers, Officer Stokes and Sergeant Al-Hinawi, related to her arrest on May 21, 2018. Officer Stokes saw Plaintiff exit the Fort Totten Metrorail station that indicated Plaintiff was in common parlance, "piggybacking," meaning she had exited the faregates from the Metrorail station closely behind another patron without processing her fare card. Station video shows Officer Stokes approach Plaintiff seconds after her exit, and standing close to her, wave his hand in front

of Plaintiff's face; the video also shows that Plaintiff briefly stopped, turned to Officer Stokes, interacted with him, but then continued to walk past him and leave the station.

The video also shows that Officer Stokes took hold of her left arm after she walked past him and tried to leave. Plaintiff immediately began struggling and resisting, and eventually pulled Officer Stokes, who was holding her only with his left arm to her left arm, off balance, and they both fell to the ground. The video shows that Plaintiff continued to struggle and resist arrest while on the ground. A crowd gathered. Sergeant Al-Hinawi arrived to help Officer Stokes with the hostile crowd and in handcuffing Plaintiff.

Plaintiff alleges claims of excessive force against the two MTPD officers, individually, for claims of: a) unlawful seizure and force under 42 U.S.C. § 1983; b) common law unlawful arrest; c) common law assault and battery; d) negligence; e) negligent intentional infliction of emotional distress; f) intentional infliction of emotional distress.

## IV.   ARGUMENT

WMATA, a non-party, moves to quash the subpoena issued by Plaintiff for WMATA's deposition pursuant to Fed. R. Civ. P. 30(b)(6) or alternatively, for a protective order, for reasons set forth herein. *See* Plaintiff's Notice of Deposition and Attachments, with its list of twelve subject areas, attached hereto as Exhibit 1 and set forth below. WMATA moves to quash all twelve of the subject areas set forth in the subpoena as they: 1) are an undue burden of a non-party; 3) not relevant; 3) seek deliberative process of WMATA; 4) are unreasonably cumulative and duplicative; 5) seek WMATA's deliberative process; 6) seek WMATA's proprietary training

information of questionable relevance to Plaintiff's claims.  As a non-party to this litigation, WMATA should not be burdened with a 30(b)(b) deposition that is duplicative of previous discovery, is of questionable value and relevance,  and which  imposes an undue burden upon WMATA.  Plaintiff's subject areas are expansive in scope; they are oppressive and unreasonable and would not be anticipated to provide any benefit to Plaintiff in her claims and the in the posture of her case and would require significant effort and preparation by WMATA to adhere to the high bar of diligence that Rule 30(b)(6) imposes on entities.  *See U.S. ex rel Fago v. M & T Mort. Corp.*, *supra; Anker v. G.D. Searle & Co.,* 126 F.R.D. 515, 519 (M.D.N.C.,1989) (being a non-party one of factors court to consider in balancing discovery requests).

Further, WMATA enjoys immunity for its governmental functions, including its police function. The D.C. Circuit has consistently recognized and held that when the WMATA transit police are involved in law enforcement activity, WMATA's function is governmental in nature.  *Davis v. Sarles*, 134 F.Supp.3d 223, 227 (D.D.C., 2015) (internal citations omitted.  *See Morris v.  WMATA*, 781 F.2d 218, 219 (D.C. Cir. 1986); *Sanders v. WMATA,* 819 F.2d 1151,1154 (D.C. Cir. 1987); *Smith v. WMATA,* 290 F.3d 201,206 (4th Cir. 2002).  Many of the subject areas pertain to WMATA's training of police officers.   WMATA enjoys immunity regarding claims of training (s*ee Burkhart v WMATA,* 112 F.3d 1207 (D.C. 1993).  It would be a significant burden upon WMATA to produce a witness in myriad of broad topic areas regarding its policies and training designated by Plaintiff; the deposition would be  oppressive and unreasonable.

Moreover, Plaintiff's claims under Section 1983, and her common law claims (assault and battery and unlawful arrest) are governed by the objective r*easonableness* of Defendants' actions, not by whatever training they may or may not have received. When analyzing an officer's force and arrests, the Supreme Court has made clear that standard is one objective reasonableness.

The objective reasonableness standard was first set forth in *Graham v. Connor*, 490 U.S. 386, 397 (1989) as the basis by which any Fourth Amendment challenge must be reviewed. Ever since *Graham,* the federal courts have held "that the subjective intent of the law enforcement officer is irrelevant in determining whether the officer's actions violate the Fourth Amendment …; the issue is not his state of mind, but the objective effect of his actions." *Bond v. United States*, 529 U.S. 334, 338, n.2 (2000). An officer's actions are reasonable under the Fourth Amendment as long as the circumstances, viewed objectively, justify the action; the officer's state of mind is irrelevant. *Scott v. United States*, 436 U.S. 128, 138 (1978).

All of Plaintiff's topic areas are similar to those that plaintiffs typically seek when trying to establish the municipality in a *Monell*-based claim. *See Monell v. New York City Dept. of Social Services,* 436 U.S. 658, (1978) (municipality can be found liable under § 1983 where the municipality causes the constitutional violation); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)(city can be liable for inadequate training under Section 1983). There are two individual officers named as Defendants in this case; there is no municipality as a co-defendant.

Plaintiff's expert in police practices, Randy Foster, has provided an expert report in this matter. Mr. Foster has opined that WMATA's MTPD General Orders are consistent with the national standard of police practices. *See* Argument, *infra,* at Topic Area # 8.

Where, both parties' experts in this litigation are in agreement that WMATA's standards, expressed through its General Orders, track the nationally accepted standards for arrest, detentions and use of force, it is oppressive and unreasonable for Plaintiff to seek the 30(b)(6) deposition topics that she has noticed.

A.     **SUBJECT AREAS OF PLAINTIFF'S 30(B)(6) NOTICE:**

   **1. Internal investigation of the incident involving Plaintiff that took place on May 21, 2018**.

The first subject area pertains to WMATA's internal investigation of the incident that forms the basis of Plaintiff's Complaint. On Monday, August 31, 2020, Plaintiff deposed MTPD Sgt. Matthew Muller, *who conducted* WMATA's internal investigation of this incident, gathered information and documents and *wrote the investigation report*.

This subject area is duplicative and cumulative of discovery Plaintiff has already conducted. *See Tri–State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 126 (D.D.C. 2005) (recognizing that Rule 30(b)(6) is "abused" where deposition is "nothing more than duplicative of the discovery already provided"). It places an undue burden upon WMATA, a non-party, to produce and prepare a witness who would be familiar with the investigation, as well as reasonably known to WMATA. *See U.S. ex rel Fago v. M & T Mort. Corp.,* 235 F.R.D. at 23. To the extent that Plaintiff, through the Rule 30(b)(6)

deposition, seeks WMATA's pre-decisional deliberations or discussion, if they exist at all, the subject area would be privileged.

By noting WMATA's deposition on the same subject matter about which Sergeant Muller – the person who conducted the internal investigation and who made findings and wrote a report documenting his findings -- provided deposition testimony already, Plaintiff is being unreasonable, oppressive and posing an undue burden upon WMATA:

> Even assuming that this information is relevant (in the broadest sense), the simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had. On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit "the frequency or extent of use of the discovery methods otherwise permitted" under the Federal Rules of Civil Procedure if it concludes that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2). Further, upon motion of a party and "for good cause shown," the court in the district in which a deposition is to be taken may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order that the discovery not be had. Fed.R.Civ.P. 26(c).

*Nicholas v. Wyndham Intern., Inc.*, 373 F.3d 537, 542–43 (4th Cir. (Va.) 2004)

WMATA moves to quash to the subpoena as to this subject area or alternatively, a protective order prohibiting Plaintiff from taking a deposition in this subject area.

### Subject Areas 2 – 3:

2. **Practices, policies, protocols, and guidance pertaining to identifying information captured on SmarTrip cards, including unregistered cards.**
3. **Practices, policies, protocols and guidance pertaining to transactions at WMATA turnstiles, including ability to enter and exit through WMATA**

**turnstiles when a card does not have sufficient fare, transaction information captured on SmarTrip cards, and SmarTrip data usage printouts**.

WMATA objects to the broad and expansive nature of these requests.  Plaintiff has received the expert disclosure of Steve Kelso, WMATA's custodian of SmarTrip records, named as an internal expert based upon his status as the custodian of SmarTrip records who can interpret and explain SmarTrip fare card use and history.  During WMATA's internal investigation of Plaintiff's arrest, WMATA checked the history of Plaintiff's recent fare transactions, which showed that she had not paid her fare the morning at Fort Totten on May 21, 2018;  Officer Stokes later wrote in his report that he saw Plaintiff "piggybacking," or exiting through a faregate very close behind another patron.

The deposition of WMATA's records custodian, Steve Kelso, named by Defendants as an expert for the purpose of explaining the SmarTrip records associated with Plaintiff's car number, obtained by Defendants after Plaintiff's arrest, has been noticed for October 1, 2020.  Mr. Kelso will explain Plaintiff's SmarTrip records, what they show and what they mean.  Deposing WMATA's designee in a 30(b)(6)  on topics 2 and 3 are cumulative and duplicative of the information that Mr. Kelso will provide.  They are also beyond the scope of his testimony and opinions.

Plaintiff's request for all of WMATA policies, procedures and protocols regarding its SmarTrip records system is oppressive and of questionable benefit to Plaintiff in her claims.  Significantly, the information regarding Plaintiff's SmarTrip history and usage did not form the basis for Plaintiff's stop and arrest of Plaintiff – both Defendants have testified that the information was obtained  *after* Plaintiff 's arrest.

Plaintiff's overbroad, ambiguous designation of the subject areas related to SmarTrip information ("practices, policies, protocols and guidance related to transactions at turnstiles") encompasses such wide-ranging subtopics, including how WMATA protects and encrypts financial information related to SmarTrip transactions; how that the information is encrypted, and how the information may be accessed, which is critical infrastructure information. None of these areas are relevant to Plaintiff's case, nor are they part of Mr. Kelso's opinions.

The information that is relevant to this case is related to Mr. Kelso's opinions regarding Plaintiff's SmarTrip history; Mr. Kelso's deposition is set for October 1, 2020. Furthermore, Plaintiff's 30(b)(6) deposition subject areas #2 and #3 has overlap with the opinions Mr. Kelso is offering. Beyond the areas for which Mr. Kelso is offering testimony, Plaintiff's 30(b)(6) subject areas puts an undue burden upon WMATA, as they are expansive with limited, if any, relevance to Plaintiff's claims. The subject areas are so broad, it is unclear to WMATA to what extent these subject areas extend; they could infringe on information that should be protected as privileged critical infrastructure information. WMATA asks this that the Court to quash Plaintiff's subpoena for these subject areas, or, to enter a protective order prohibiting discovery beyond the opinions being offered by Mr. Kelso.

**Subject Areas 4 through 7:**

4. WMATA or MTPD practices, policies, protocols and guidance pertaining to use of force, voluntary contacts, stops, detentions, and/or arrests in effect on May 21, 2018.
5. WMATA or MTPD practices, policies, protocols, or guidance pertaining to fare evasion, including but not limited to definitions of piggy-picking, contacting,

      investigating, issuing a citation, or arresting an individual on suspected fare evasion, in effect on May 21, 2018.
6. WMATA or MTPD practices, policies, protocols, or guidance pertaining to resisting arrest in effect on May 21, 2018.
7. WMATA or MTPD practices, policies, protocols, or guidance pertaining to conducting an investigation into a suspected crime (including the suspected crime of fare evasion), including gathering of evidence, preservation of evidence, chain of custody maintenance and an arresting officer's responsibilities, in effect on May 21, 2018.

Plaintiff essentially will cover the majority of Fourth Amendment and policing issues with the broad and oppressive scope of these topic areas. *Also see* Topic 8, which covers all training related to subject 2-7; WMATA incorporates its argument from Topic 8 herein. WMATA must produce testimony on its "practices, policies, protocols or guidance" pertaining to a) use of force; b) contacts, detentions, and arrests; c) piggy-backing; d) investigating and issuing a citation; e) resisting arrest; f) conducting an investigation into crimes; g) gathering of evidence; h) preservation of evidence; chain of custody; i) arresting officer's responsibilities.

This list is oppressive. It places an undue burden upon WMATA, a non-party who enjoys sovereign immunity for governmental functions, which include is operations of its police force. *See Morris v. WMATA, supra*. This broad designation of Fourth Amendment topic areas would require WMATA to prepare and produce designees to explain basically *all policing matters* related WMATA's use of force, detention and arrests and investigation of crimes.

When WMATA asked Plaintiff's counsel the basis for her seeking WMATA's deposition on these topics one of the reasons given, her response was that the 26(a)(2)(b) opinion by Defendants' police practices and use of force expert, Charles Key referenced

training. However, Mr. Keys' expert opinions are that Defendants' action *were consistent with the standards of accepted police policies, practices and training* regarding the minimal force Defendants' used in effecting Plaintiff's arrest. *See* ECF. # 21-1. His opinions were not based on *WMATA's* MTPD General Orders, but nationally accepted standards. Mr. Keys quoted one of MTPD's General Orders, pertaining to *Stops, Contacts and Arrests* when providing his written opinions, and w. *Id*. None of his opinions referenced any specific training provided solely by WMATA's MTPD as the basis for his opinion, rather, the national standards of police training and practices and in accordance with federal case precedent discussing probable cause for arrests. Id. at

The Supreme Court has expressly stated that an officer's training is not controlling for determining whether an officer has legal justification for a stop or arrest:

> Nothing in our Fourth Amendment precedent supports the notion that, in determining whether reasonable suspicion exists, an officer can draw inferences based on knowledge gained only through law enforcement training and experience. We have repeatedly recognized the opposite.

*Kansas v. Glover*, 589 U.S. __ ; 140 S. Ct. 1183, 1189 (2020).

Moreover, these topic areas do not apply to Plaintiff's claims of negligence. Plaintiff's sole allegation of negligence is that Defendant Stokes was negligent in failing to notice and somehow address in a chaotic situation involving a hostile crowd surrounding him, that her tube-style top, which circled her chest but did not have any straps to secure the top over shoulder, became displaced some time during resisting her arrest by Officer Stokes, while she lay on her stomach, struggling on the ground; she also alleges that Sgt. Al-Hinawi should have noticed the displaced stop before both Defendants partially lifted

her off the ground. As Plaintiff herself states in her Answer to Defendant Stokes Interrogatory Number 5, her claim of negligence is that

> "Defendants had a duty to act as reasonably prudent officers would, and to avoid "unnecessary and wanton severity," D.C. Code § 5-123.02, and Officer Stokes breached that duty when he caused Plaintiff's top to come off during the arrest and did not let her cover herself before Officer Al-Hinawi arrived."

Excerpt from Plaintiff's Answer to Stokes Interrogatory No. 5.

Even assuming that the intentional tort language of the D.C. Code upon which Plaintiff relies in her interrogatory is not simply the dressing up an intentional tort claim in the clothes of negligence, Plaintiff's **allegations of negligence are based solely on her assertions regarding her top becoming displaced** during the arrest. Whether Plaintiff is able to make out a cognizable claim of negligence or not on that issue, that sole negligence claim bears little, if any, relevance to WMATA's twelve years of training both Defendants on most subjects issues covered by and under the Fourth Amendment. (e.g., fare evasion, chain of custody of evidence, issuing a citation (Plaintiff was not issued a citation) and all other subject topic areas about which Plaintiff seeks to depose WMATA in areas numbered four through seven.

On September 7, 2020, WMATA's counsel suggested to Plaintiff's counsel that the 30(b)(6) deposition scheduled for October 5, 2020, should be postponed until after both Mr. Kelso's deposition (scheduled for October 1, 2020) and Mr. Keys' depositions (scheduled October 19, 2020) and assessing at that point, what if anything additional is necessary. WMATA's counsel further suggested that because Plaintiff relies on Mr. Keys' report as the basis for deposing WMATA on all of its training, "it would make

sense that you depose him first regarding any and all training he is referring to or relying on, without first placing a substantial burden on a non-party, such as WMATA, to prepare for what will entail to be a significant burden to prepare a 30(b)(6) witness."

Plaintiff, in response, suggested that WMATA's training is evidence of Plaintiff's "duty not to engage in certain behavior;" and Defendants "intent when they acted against Ms. Ulysse;" and even evidence of "Defendants' routine practice or habits." Email of Plaintiff's counsel, Ms. Wu, September 14, 2020.

On September 21, 2020, WMATA's counsel replied, stating that most topic areas were cumulative and duplicative; that case law regarding the relevance of training generally pertains to claims against the law enforcement agency; and that Mr. Keys offered opinions based upon his *personal* knowledge and experience, as a trainer himself, and his knowledge of the practice of law enforcement agencies nationally – not based upon what *WMATA* specifically trained officers on. Plaintiff's counsel responded that same day, September 21st, that she did not see any additional need for further back and forth on the 30(b)(6) dispute and intended to move forward.

WMATA moves to quash to the subpoena as to this subject area or alternatively, a protective order prohibiting Plaintiff from taking a deposition in this subject area.

**Subject Areas 8:**

8. **WMATA or MTPD formalized training regarding the topics described in Topics 2 through 7 supra that have been made available to Defendants, including yearly legal updates, bulletins, continuing education and presentations**.

WMATA asserts the same objections and arguments as it made regarding subject topics 2 through 7. Plaintiff is seeking Defendants' "formalized training" as to Topics 2 through 7, which is the same as requesting twelve years or more of training that each Defendant has been an MTPD member. The topics of the training designated for the deposition cover the full spectrum of 4th amendment jurisprudence: contacts; detentions; arrests; use of force; chain of custody, etc. This expansive subject area is duplicative and cumulative, oppressive and places an undue burden upon WMATA.

Further, these topics are irrelevant, as Plaintiff's designated expert in police practices, Randy Foster, has opined that MTPD's General Orders, which set forth the standards that MTPD expects of its officers are consistent with national police practices, stating so several times in his report: a) "Again, MTP's policy that an officer may only use necessary force to affect [sic] a stop or arrest is consistent with my understanding of national best practices." (Foster Report, p. 9); and, b) "***MTP's policies are entirely consistent with the national consensus of policies and procedures***." (Foster Report, p. 8).

Even assuming hypothetically that WMATA's MTPD police policies were not consistent with national police practices – or, even that its training was deficient in some way, it would not be relevant to this case. WMATA's actions, policies, training, guidance and protocols have no bearing on the proof of Plaintiff's claims. Plaintiff must show that Defendant Stokes did not possess probable cause and/or reasonable suspicion when he saw Plaintiff fare evade and tried to detain her and then held onto her and arrested her, which is determined by the facts known to the officer at that time, not by any prior training he may have had.

The force used in this arrest is documented on video. Whether Defendants' use of force meets the standard of objective reasonableness of *Graham v. Connor* will not determined by WMATA's training, policies or procedures. *Also see, Barnhardt v. District of Columbia,* 723 F.Supp.2d 197, 218–19 (D.D.C., 2010)(Breach of departmental policy not constitutional violation).

WMATA moves to quash to the subpoena as to this subject area or alternatively, a protective order prohibiting Plaintiff from taking a deposition in this subject area.

**Subject Areas 9 and 12**

9. **Information pertaining to Exhibit A, Def. 195-215, including whether it was part of any training offered by WMATA or MTPD, the time period it was conducted, and any other corresponding materials pertaining to the training.**
12. **The portions of Defendant's personnel files produced as Defendants' 87- 0223.**

Def. Exhibits 87-0223 are, cumulatively, both Officer Stokes and Sergeant Al-Hinawi's training files. Def. 195-215 pertain solely to Officer Stokes. Both Defendants have been deposed – Sgt. Al-Hinawi on September 24 and Officer Stokes on September 25 --and Plaintiff had the opportunity to ask, and did ask them, directly about their training and about the documents labeled as Def. 195-215. Requiring WMATA to produce a deponent about the Defendants' training is duplicative and cumulative. *See* argument in response to topic areas 4-8, supra, which are incorporated herein. It is also oppressive and of questionable relevance in that an officer's training is rarely relevant to the claims raised by Plaintiff in her Complaint. *Kansas v. Glover*, 589 U.S. __ ; 140 S. Ct. at 1189.

WMATA moves to quash to the subpoena as to this subject area or alternatively, a protective order prohibiting Plaintiff from taking a deposition in this subject area.

**Subject Area 10:**

**10. Information pertaining to the "Fare Evasion" training led by Officers Sesok and Hunt attached hereto as Exhibit B, including the time period the training was conducted and to whom.**

In Exhibit B, Plaintiff has produced an apparent copy of an exhibit attached to a motion from a case filed in this Court in 2002, *Halcomb v. WMATA*, regarding a presentation on fare evasion from two retired WMATA officers, Officer Sesok, who passed away last year, and Officer Hunt. This historical document regarding alleged training from 20 years ago has already been presented to both Defendants, neither of whom recognized it. Officer Stokes disagreed with the accuracy of the information presented in the document regarding the elements of the crime of fare evasion.

WMATA's training of Defendants have no relevance to whether the individual Defendants had had actual or good faith probable cause to arrest Plaintiff or whether the force they used was objectively reasonable. The Defendants' use of force in effecting Plaintiff's arrest is governed by the "objective reasonableness" standard, set forth in *Graham v. Connor, supra*.

Moreover, Plaintiff has deposed the party-Defendants on the same subject area. They have answered questions regarding this document. The is almost two decades old, pre-dates Defendant Al-Hinawi's hiring at MTPD and involves information from retired

officers. Requiring WMATA to produce and prepare a witness on this subject is oppressive and burdensome, cumulative and duplicative.

WMATA moves to quash to the subpoena as to this subject area or alternatively, a protective order prohibiting Plaintiff from taking a deposition in this subject area

### Subject Area 11:

11. **Information pertaining to the internal investigation of the incident involving J. S. (name redacted) that took place on March 7, 2017.**

Earlier in discovery, WMATA, after Plaintiff filed a Motion to Compel, and the Court heard argument, produced its full internal investigation file regarding an incident that occurred in early 2017 involving Officer Stokes and an individual named "J.S." Plaintiff is in possession of that file, which includes documents, statements and WMATA's report and conclusions. Now Plaintiff has named this same subject area as one about which it wants to depose WMATA, seeking "information" pertaining to its internal investigation. This request, besides being cumulative and duplicative of the information Plaintiff already possesses, is oppressive, an undue burden and signals that Plaintiff is moving into the realm of deliberative process.

WMATA, a non-party, is essentially being asked to prepare a witness to repeat the same information that WMATA has produced already to Plaintiff, on a matter wholly un-related to Plaintiff's claim. *See Tri–State Hosp. Supply Corp. v. United States, supra*. Moreover, to the extent that Plaintiff seeks WMATA's deliberative process during the internal investigation -- if such information exists -- that information is privileged and

non-discoverable. WMATA's process and procedures it took in conducting an internal investigation are irrelevant to Plaintiff's complaint.

The subject area is also an undue burden and oppressive. It is designed to harass and annoy WMATA. WMATA's internal investigation, on a matter wholly unrelated to her claim, in in Plaintiff's possession, together with WMATA's evidence, analysis, and decision. To the extent that Plaintiff is seeking WMATA to discuss internal process of how WMATA arrived at its decision in a wholly unrelated matter would protected as deliberative process.

WMATA moves that this Court quash Plaintiff's subpoena as to this subject matter, as it is and undue burden in that it is duplicative, unreasonable, requires WMATA to take the time to prepare and produce a witness to state the same information that Plaintiff already has, and it irrelevant to Plaintiff's claims. In the alternative, WMATA moves to prohibit Plaintiff's deposition from going forward on October 5, 2020. After the deposition of Defendants' expert, Charles Key on October 19, Plaintiff may renew its request, for good shown, for WMATA's 30(b)(6), with narrowly tailored subject areas that are not duplicative or an undue burden upon WMATA. Plaintiff is prohibited from renewing its request for Topics 1 -3, and 8 -12.

September 30, 2020          Respectfully submitted,

>           /s/ Janice L. Cole
> Janice L. Cole, Esquire (#440351)
> 600 Fifth Street, N.W.
> Washington, D.C.  20001
> T: (202) 962-2543; F: (202) 962-2550
> jlcole@wmata.com
> Attorney for WMATA