# TABLE OF CONTENTS

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY OFFICER STOKES AND SGT. AL-HINAWI** ...................................................................................... 1

**PROCEDURAL POSTURE** ..................................................................................................... 1

**FACTS** ...................................................................................................................................... 1

**STANDARD OF REVIEW** ...................................................................................................... 1

**ARGUMENT** ........................................................................................................................... 2

**I.    PLAINTIFF'S CLAIMS OF UNREASONABLE SEIZURE UNDER 42 U.S.C. § 1983 (COUNT ONE), UNLAWFUL ARREST/UNLAWFUL IMPRISONMENT (COUNT VI) AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT V) ARE FORECLOSED BY DEFENDANTS' PROBABLE CAUSE.** ............................................... 2

   A.  Standard Of Probable Cause ............................................................................................ 2

   B.  Standard For Genuine Dispute of Facts With Conflicting Video Evidence. ................... 3

   C.  The Uncontested Evidence Establishes That Defendants Had Probable Cause To Arrest Plaintiff As A Matter Of Law. ........................................................................................... 5

   D.  Plaintiff's Claim Of Unreasonable Seizure Under 42 U.S.C. § 1983 For Lack Of Probable Cause (Count One) Must Be Dismissed. ........................................................ 11

   E.  Plaintiff's False Arrest/Imprisonment Claim (Count VI) Must Be Dismissed Due To Defendants' Probable Cause to Arrest. ......................................................................... 13

   F.  Probable Cause And Her Failure To Make A *Prima Facie* Case Both Defeat Plaintiff's Claim of Intentional Infliction of Emotional Distress. ................................................. 14

      1. Probable Cause Defeats Plaintiff's IIED Claim ......................................................... 14

      2. Plaintiff Fails To Make A *Prima Facie* Claim Of IIED ............................................. 15

**II.    DEFENDANTS' OBJECTIVELY REASONABLE  USE OF FORCE FORECLOSES PLAINTIFF'S CLAIM OF  EXCESSIVE FORCE UNDER §1983 (COUNT ONE).** ........................ 17

   A.  Defendants Stokes' and Al-Hinawi's Use of Force Was Objectively Reasonable Based On Video Evidence And Other Undisputed Facts. ............................................................ 18

   B.  Video Evidence Shows That Officer Stokes Did Not Force Plaintiff To The Ground, Place His Knees In Her Back, Or Handle Her Roughly. ................................................. 19

   C.  Plaintiff's Expert's Opinions Regarding Defendants' Use Of Force Should Be Rejected By This Court Because He Misconstrues Legal Standards And Fails To Generate Issues of Material Fact 21

**III.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR PLAINTIFF'S SECTION 1983 CLAIMS.** ............................................................................................... 24

**IV.    DEFENDANTS' ACTIONS WERE REASONABLY NECESSARY AND PRIVILEGED, REQUIRING DISMISSAL OF PLAINTIFF'S CLAIMS OF ASSAULT AND BATTERY (COUNT VI).** ........................................................................................................... 29

**V.  PLAINTIFF'S NEGLIGENCE CLAIM MUST BE DISMISSED AS A MATTER OF LAW** . 32

   A.  Plaintiff Has Pled An Intentional Tort And Not Negligence ......................................... 32

   B.  Plaintiff Fails To Identify An Applicable National Standard Of Care. ......................... 35

   C.  Plaintiff's Claim Is Barred By Her Own Negligence .................................................... 37

**VI.    PLAINTIFF'S CLAIM OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS FAILS WITHOUT EVIDENCE OF NEGLIGENCE** ..................................................... 39

**VII.    CONCLUSION** ............................................................................................................. 41

i

## TABLE OF AUTHORITIES

*Amobi v. D.C. Dep't of Corr.,* 755 F.3d 980 (D.C.Cir.2014)......................................................... 15

*Anderson v. Creighton,* 483 U.S. 635 (1987) .................................................................... 26

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................ 2

*Armbruster v. Frost,* 962 F.Supp.2d 105 (D.D.C.,2013) ........................................................ 20

*Arnold & Porter,* 756 A.2d 427 (D.C.2000)................................................................... 36

*Ashcroft v. al–Kidd,* 563 U.S. 731 (2011)............................................................... 24, 25

*Aubin v. District of Columbia,* No.  2016 WL 509283 (D.D.C. Feb. 8, 2016)........................... 40

*Augustus v. McHugh*, 870 F.Supp.2d 167 (D.D.C., 2012)...................................................... 24

*Ball v. United States,* 803 A.2d 971 (D.C. 2002)................................................................. 3

*Barnhardt v. District of Columbia*, 723 F.Supp.2d 197 (D.D.C.,2010) .................................... 12

*Bradshaw v. District of Columbia,* 43 A.3d 318 (D.C. 2012) .............................................. 13

*Briggs v. Wash. Metro. Area Transit Auth.,* 481 F.3d 839 (D.C.Cir.2007)........................... 36, 37

*Brinegar v. U.S.,* 338 U.S. 160 (1949).......................................................................... 3

*Brosseau v. Haugen,* 543 U.S. 194 (2004) ...................................................................... 25

*Byas v. Dorsey,* 192 F.2d 613 (D.C. Cir. 1951).................................................................. 37

*Campbell v. District of Columbia*, 245 F.Supp.3d 78 (D.D.C., 2017)........................................ 11

*Carroll v. United States*, 267 U.S. 132, 162 (1925) ........................................................... 3

*Casey v. Ward*, 211 F.Supp.3d 107 (D.D.C. 2016)............................................................ 23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................... 2

*Corrigan v. Glover*, 254 F.Supp.3d 184 (D.D.C., 2017) ........................................................ 25

*\*Cromartie v. District of Columbia*, 479 F. App'x 355 (D.C. Cir. 2012) ........................... 20, 27

*\*Cutchin v. District of Columbia*, 369 F.Supp.3d 108 (D.D.C., 2019) ............................... 14, 27

*Daniels v. United States,* 393 F.2d 359 (D.C.Cir.1968) ....................................................... 12

*Dellums v. Powell,* 566 F.2d 167 (D.C. Cir. 1977)................................................................. 13

*District of Columbia v. Carmichael,* 577 A.2d 312 (D.C. 1990)............................................... 36

*\*District of Columbia v. Chinn*, 839 A.2d 701 (D.C. 2003)........................................... 29, 32, 39

*District of Columbia v. Moreno,* 647 A.2d 396 (D.C. 1994 ..................................................... 36

*District of Columbia v. Murphy*, 635 A.2d 929 (D.C.1993).................................................... 13

*\*District of Columbia v. Wesby*, ___ U. S. ___, 138 S.Ct. 577 (2018) ....................................... 3

*District of Columbia v. White,* 442 A.2d 159 (D.C. 1982) .................................................... 36

*Dormu v. D.C.*, 795 F Supp.2d 7 (D.D.C. 2011) ............................................................... 18

*Enders v. District of Columbia,* 4 A.3d 457 (D.C. 2010) ...................................................... 13

*Garay v. Liriano,* 943 F. Supp. 2d 1 (D.D.C. 2013)............................................................ 18

*Gayden v. United States*, 107 A.3d 1101 (D.C. 2014).......................................................... 10

*General Elevator Co, Inc. v. District of Columbia*, 481 A.2d 116 (D.C. 1984)........................... 37

*George Washington Univ. v. Waas*, 648 A.2d 178 (D.C. 1994)............................................... 38

*Girdler v. United States*, 923 F. Supp. 2d 168 (D.D.C., 2013)................................................ 35

*\*Goolsby v. District of Columbia*, 317 F.Supp.3d 582 (D.D.C 2018)......................................... 27

*Graham v. Connor,* 490 U.S. 386 (1989) ................................................................ 17, 18, 26

*Greene v. Dalton,* 164 F.3d 671 (D.C. Cir. 1999) .................................................................. 2

*Harding v. Gray,* 9 F.3d 150 (D.C. Cir. 1993) ...................................................................... 2

*Hargraves v. District of Columbia*, 134 F.Supp.3d 68 (D.D.C., 2015) ................... 16, 17, 22, 31

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) .......................................................................... 24

*Harris v. District of Columbia,* 696 F.Supp.2d 123 (D.D.C.2010) .......................................... 16

*Harris v. United States VA*, 776 F.3d 907 (D.C. Cir. 2015) .................................................... 39

*Hedgepeth v. Whitman Walker Clinic,* 22 A.3d 789 (D.C. 2011) .............................................. 40

*Homan v. Goyal*, 711 A.2d 812 (D.C. 1998) ........................................................................ 16

*Hudson v. Goob*, 2009 WL 789924 ...................................................................................... 29

*Hughes v. District of Columbia,* 425 A.2d 1299 (D.C. 1981) .................................................. 36

*Illinois v. Gates*, 462 U.S. 213 (U.S.Ill.,1983) ...................................................................... 3

*Illinois v. Wardlow*, 528 U.S. 119 (2000) .............................................................................. 9

*INS v. Delgado*,466 U.S. 210 (1984) ..................................................................................... 9

*Jackson v. District of Columbia,* 412 A.2d 948 (D.C.1980) .................................................... 17

*Johnson v. District of Columbia,* 528 F.3d 969 (D.C.Cir.2008) .............................................. 25

*Johnson v. Glick*, 481 F.2d 1028 (2nd Cir. 1973) .................................................................. 25

*Jonathan Woodner Co. v. Breeden,* 665 A.2d 929 (D.C.1995 ................................................ 15

*Kotsch v. District of Columbia*, 924 A.2d 1040 (D.C. 2007) .................................................... 15

*Laningham v. U.S. Navy*, 813 F.2d 1236 (D.C. Cir. 1987) ....................................................... 2

*Larijani v. Georgetown Univ.*, 791 A.2d 41 (D.C. 2002) .......................................................... 15

*Lash v. Lemke,* 786 F.3d 1 (D.C. Cir. 2015) ..................................................................... passim

*Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394 (D.D.C., 2017) ...................... 37

*Lynn v. D.C.*, 734 A.2d 168 (D.C. 1999) ............................................................................... 38

*Martin v. George Hyman Construction Company*, 395 A.2d 63 (D.C. 1978) ............................. 38

*McGovern v. George Washington University*, 245 F. Supp. 3d 167 (D.D.C., 2017) ............. 5, 12

*Merit Motors, Inc. v. Chrysler Corp.,* 569 F.2d 666 (D.C.Cir.1977) ......................................... 23

*Moore v. District of Columbia*, 79 F.Supp.3d 121 (D.D.C., 2015) ........................................... 36

*Muldrow v. Re-Direct, Inc.*, 493 F.3d 160 (D.C. Cir. 2007) ..................................................... 38

*NBW Commercial Paper Litig.*, 826 F. Supp. 1448 (D.D.C. 1992) ........................................... 38

*Oberwetter v. Hilliard*, 639 F.3d 545 (D.C. Cir. 2011) ........................................................... 27

*Paul v. Howard University*, 754 A.2d 297 (D.C., 2000) .......................................................... 16

*Pearson v. Callahan,* 555 U.S. 223 (2009) ........................................................................... 24

*Periera v. Lizzio*, 2012 WL 1205750 ..................................................................................... 29

*Phillips v. District of Columbia,* 714 A.2d 768 (D.C. 1998) .................................................... 36

*Raskin v. Wyatt Co.*, 125 F.3d 55 (2nd Cir. 1997) ................................................................. 24

*Reichle v. Howard,* 566 U.S. 658 (2012) ............................................................................... 26

*Rice v. District of Columbia,* 774 F.Supp.2d 18 (D.D.C.2011) ......................................... 13, 39

*Rogala v. District of Columbia* 161 F.3d 44 (D.D.C 2011) ............................................ 18, 25, 29

*Saucier v. Katz,* 533 U.S. 194 (2001) ................................................................................... 25

*Scoggins v. Jude*, 419 A.2d 999 (D.C. 1980) ................................................................. 37

*\*Scott v. Harris,* 550 U.S. 372 (2007) ..................................................................... 4, 5, 24

*Sere v. Group Hospitalization, Inc.,* 443 A.2d 33 (D.C.1982) ...................................... 16

*Shuey v. Schwab,* 2010 WL 479938 .............................................................................. 29

*Sibley v. St. Albans Sch.,* 134 A.3d 789 (D.C. 2016) .................................................... 40

*Smith v. District of Columbia* 882 A.2d 778 (D.C. 2005) ............................................. 34

*Smith v. United States,* 843 F.3d 509 (D.C. Cir. 2016) ................................................. 15

*Stager v. Schneider,* 494 A.2d 1307 (D.C. 1985) .......................................................... 37

*Stevens v. Stover,* 727 F.Supp. 668 (D.D.C.1990) ........................................................ 16

*Tennessee v. Garner,* 471 U.S. 1 (1985) ....................................................................... 26

*Terry v. Ohio,* 392 U.S. 1 (1968) .................................................................................... 9

*Texas v. Brown,* 460 U.S. 730 (1983) ............................................................................. 3

*U.S v. Robinson,* 414 U.S. 218 (1973) ........................................................................... 12

*United States v. Hensley,* 469 U.S. 221 (1985) ............................................................. 12

*\*Varner v. District of Columbia,* 891 A.2d 260 (D.C.,2006) ............................ 23, 35, 36

*Virginia v. Moore,* 553 U.S. 164 (2008) ....................................................................... 12

*W.M. Schlosser Co. v. Maryland Drywall Co.,* 673 A.2d 647 (D.D.C. 1996) ............... 38

*Wannall v. Honeywell Intern. Inc.,* 292 F.R.D. 26 (D.D.C.2013) ................................. 23

*Wardlaw v Pickett,* 1 F.3d 1297 (D.C. Cir. 1993) ........................................................ 18

*\*Wasserman v. Rodacker,* 557 F.3d 635 (D.C. Cir. 2009) ............................................ 27

*White v. Pauly* ___ U.S. ___, 127 S. Ct. 548 (2017) ..................................................... 26

*\*Whittaker v. Munoz,* 2019 WL 4194499 (D.D.C., 2019) ............................................... 6

*WMATA v. Ferguson,* 977 A.2d 375 (D.C.2009) ........................................................... 35

**Other Authorities**

D.C. Code § 22-405.01 (2018) .......................................................................... 5, 10, 39

D.C. Code § 35-216 (2018) ....................................................................................... 5, 6

D.C. Code § 5-123.02 ................................................................................................. 34

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **HUGUETTE ULYSSE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **CASE NO.:  1:19-cv-01465 CJN** |
| **OFFICER STOKES, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY OFFICER STOKES AND SGT. AL-HINAWI

Officer Stokes and Sgt. Al-Hinawi, by and through undersigned counsel, hereby move for summary judgment on all claims asserted against them by the plaintiff.

### PROCEDURAL POSTURE

On May 20, 2019, Plaintiff filed a six-count Complaint against Defendants, employed by the Washington Metropolitan Area Transit Authority's ("WMATA") Metro Transit Police Department ("MTPD").   Plaintiff's claims arise out of her arrest at WMATA's Fort Totten Metrorail station, on May 21, 2018, for fare evasion and resisting arrest.  (Complaint, ECF #1 at ¶1).  Her Complaint alleges Fourth Amendment claims of excessive force and unreasonable seizure under 42 U.S.C. §1983 (Count One); assault and battery (Count Two); negligence (Count Three); negligent infliction of emotional distress (Count Four); intentional infliction of emotional distress (Count Five); and false arrest and false imprisonment (Count Six).

### FACTS

*See* Defendants' Statement of Material Facts Not in Dispute ("SMF"), attached hereto as Exhibit 1.

### STANDARD OF REVIEW

Summary judgment is appropriate whenever the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.  Once the moving party makes the initial showing that no issue exists as to any material fact, the burden shifts to the opposing party to demonstrate the existence of a material factual dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Plaintiff, as the non-moving party, is required to provide evidence that would permit a reasonable jury to find in his favor.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  In ruling upon a summary judgment motion, all reasonable inferences that may be drawn from the facts in the record must be drawn in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The inferences, however, must be reasonable, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing that creates a genuine issue of material fact.  *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).  Mere conclusory allegations are insufficient to raise a genuine issue of material fact.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## ARGUMENT

**I.  PLAINTIFF'S CLAIMS OF UNREASONABLE SEIZURE UNDER 42 U.S.C. § 1983 (COUNT ONE), UNLAWFUL ARREST/UNLAWFUL IMPRISONMENT (COUNT VI) AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT V) ARE FORECLOSED BY DEFENDANTS' PROBABLE CAUSE.**

### A.  Standard Of Probable Cause

Probable cause exists where officers have knowledge of facts and circumstances which are reasonably trustworthy and "sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Brinegar v. U.S.,* 338 U.S. 160, 175–76 (1949); *quoting Carroll v. United States*, 267 U.S. 132, 162 (1925).  As explained in *Illinois v. Gates*, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."

2

*Illinois v. Gates*, 462 U.S. 213, 232 (U.S.Ill.,1983).

"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Brinegar,* 338 U.S. at 175 (internal quotation marks and citation omitted.  "It is clear that only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause." *Gates,* 462 U.S. at 235 (internal quotation marks and citation omitted).  Nor does probable cause "demand any showing that [the arresting officer's belief in a suspect's guilt] be correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742 (1983) (plurality opinion); *accord Ball v. United States,* 803 A.2d 971, 974 (D.C. 2002).

In *District of Columbia v. Wesby*, ___ U. S. ___, 138 S.Ct. 577, 585-589 (2018) the Supreme Court overturned the D.C. Circuit's ruling in which the Circuit found no probable cause for an arrest by District of Columbia officers.  *Id.*  The Supreme Court held that the Circuit failed to consider the "totality of the circumstances" in their analysis.  *Id.*  The facts of the case must not be viewed in isolation, because "[o]ur precedents recognize that the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation." *Id.* at 588 (internal citations omitted).  All facts, from the standpoint of the objectively reasonable officer must be examined. *Id.*  Probable cause is not "a high bar."  *Id*. (internal citations omitted).  Under the totality of the circumstances, including the video evidence and the officers' background, training and experience trained in fare evasion, probable cause existed for Plaintiff's arrest.

**B.  Standard For Genuine Dispute of Facts With Conflicting Video Evidence.**

The obligation of a court to view the facts in the light most favorable to the nonmoving party on motion for summary judgment is only applicable when, and if, there is a *genuine* dispute of facts.  *Scott v. Harris,* 550 U.S. 372, 380 (2007)(internal citations omitted)(emphasis added). "When opposing parties tell two different stories, one of which is blatantly contradicted by the

record, so that no reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment." *Id.*  The Supreme Court

rejected the non-movant/suspect's version of the facts in *Scott v. Harris*; the non-movant claimed

that he was not a threat while fleeing from the police in his car. *Id*. at 379.  The Supreme Court

noted that the "videotape [told] quite a different story" from the story told by the suspect. *Id*.

The video showed the non-movant in his car "racing down narrow, two-laned roads in the dead

of night at speeds that are shockingly fast;" his car could be seen to 'swerve around more than a

dozen cars" and force other drivers onto the shoulders of the road to avoid collisions. *Id*.

The D.C. Circuit was confronted with video evidence in *Lash v. Lemke,* 786 F.3d 1, 6

(D.C. Cir. 2015) that also told a story different from what the non-movant alleged.  The Circuit

Court viewed the facts in the light established by the video evidence, rejecting the non-movant's

version of the facts, and affirmed the grant of summary judgment in favor of several U.S. Park

Police ("USPP") officers. *Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015).  Lash, the non-movant,

had alleged that the USPP officers unlawfully tased him while he was part of the Occupy D.C.

encampment at McPherson Square in 2012. *Id.* at 3-4.  After viewing the video evidence, the

D.C. Circuit rejected Lash's affidavit in which he declared that he did not resist arrest. *Id.* at 6.

"…[W]hen a nonmovant's account of the facts is "utterly discredited" by the clear evidence

provided by a video recording, the Court has instructed us not to rely on a 'visible fiction' but

rather 'view [ ] the facts in the light depicted by the video record." *Id*. at 6 (internal citations

omitted).  Whatever allegations plaintiff asserted, the D.C. Circuit "know[s] to a certainty that he

resisted arrest because we can see him doing so." *Id*. at 7.

Officer Stokes and Sgt. Al-Hinawi attach to this motion video evidence which depicts

recorded facts that wholly discredit Plaintiff's allegations of constitutional and common-law

unlawful seizure and excessive force by Defendants on May 21, 2018, at the Fort Totten

Metrorail Station.  *See* Exhibit 2, Fort Totten Metrorail Station video.  Defendants' video

evidence requires this Court reject Plaintiff's version of facts as the same type of "visible fiction"

rejected by the Supreme Court *Scott v. Harris* and this Circuit in *Lash v. Lemke*.

**C.  The Uncontested Evidence Establishes That Defendants Had Probable Cause To Arrest Plaintiff As A Matter Of Law.**

On May 21, 2018, Officer Stokes and Al-Hinawi arrested Plaintiff for fare evasion, under

D.C. Code § 35-216 (2018), as well as for resisting arrest, under D.C. Code § 22-405.01 (2018).[1]

*See* Complaint, ECF #1. Both acts were crimes in the District of Columbia on May 21, 2018.[2]

"To determine whether [an officer] had probable cause to believe that [a plaintiff was]

violating District of Columbia law, we look to District law to identify the elements of each of

those offenses." *McGovern v. George Washington University*, 245 F. Supp. 3d 167 (D.D.C.

2017)(citation and internal quotation marks omitted).  The  relevant portion of the fare evasion

statute stated that, "No person shall  [ . . .] knowingly enter or leave the paid area of a real transit

station owned and/or operated by the Washington Metropolitan Area Transit Authority which is

located within the corporate limits of the District of Columbia without paying the established

fare [. . .]" DC Code § 35-216 (2018).  Fare evasion is a general intent statute so that "the

requisite intent required to violate the statute is the general intent to commit the act that

constitutes the crime, not intent to violate the law itself." *Whittaker v. Munoz*, 2019 WL

4194499, at *4 (D.D.C., 2019)(internal citations omitted).

---

[1] "Whoever without justifiable and excusable cause intentionally resists an arrest by an individual who he or she has reason to believe is a law enforcement officer or prevents that individual from making or attempting to make an arrest of or detain another person shall be guilty of a misdemeanor [. . .].  DC Code § 22-405.01.
[2] Effective May 3, 2019,  the D.C. Council passed a law rendering fare evasion a criminal infraction.  *See* DC Code § 35-252.

Officer Stokes arrested Plaintiff on May 21, 2018 after he observed Plaintiff pass through the exit faregates at Fort Totten Metrorail station by following closely behind the woman in front of her. SMF ¶¶ 16, 18; Exhibit 7, MTPD Internal Investigation ("Int. Inv."), Stokes' Written Statement, at # 0013.  The woman who entered the fare gate in front of Plaintiff tapped her SmarTrip card and causing the fare gates to open.  *Id*.  Plaintiff entered the fare gate so that she occupied the fare gate at the same time as the woman in front of her, an act commonly referred to as "piggybacking."  SMF ¶¶ 21, 22, 28.

The video evidence shows that Plaintiff and the woman in front of her occupy fare gate at the same time.  Exhibit 2, Fort Totten Metrorail Station Video ("Ft. Totten video"), camera X111 at 8:50:50 – 8:50:54 a.m.  The barriers inside the fare gate open when the first woman placed her SmarTrip card on or near the fare gate target on top of the gate. Ex. 2, Fort Totten Video, camera X111 at 8:50:50 – 8:50:54.  Plaintiff is seen entering the fare gate just behind the first woman, holding her right hand toward the sensor.  *Id*.  Plaintiff and the first woman occupy the same fare gate at the same time.  *Id*.  The barrier arms of the fare gate do not close between the woman and Plaintiff.  *Id*. The barrier closes just after Plaintiff exits the fare gates.  *Id*.

Officer Stokes is seen on the video walking several feet towards Plaintiff from where he was first standing at the station entrance. Ex. 2, Fort Totten Video, camera X111 at 8:50:58 – 8:51:00.  After exiting the fare gate, Plaintiff is seen walking towards the station entrance, but trying to do so with the widest possible path away from Officer Stokes, who is still by the station entrance.  *Id*. at 8:50:58 – 8:51:02.  The video shows that Officer Stokes approached within several feet of Plaintiff, so that his path intersected with Plaintiff's at a right angle, just as Plaintiff approached the station entrance.  *Id*.  Upon arriving within just a few feet of  Plaintiff, Officer Stokes is seen waving his right arm, bent at the elbow, at the level of, and in front of

Plaintiff's face; his hand passes directly in front of the direction of her gaze.  *Id*.  His hand is close to Plaintiff's person, within a few feet of her face.  *Id.*  After Officer Stokes made these waving motions in front of Plaintiff's face, Plaintiff turned her upper body and head to her right, in the direction of Officer Stokes, while continuing to walk forward to the station entrance gates. *Id*. With her face turned to Officer Stokes, Plaintiff gestured with her right hand, lifting it up and outwards, towards Officer Stokes.  *Id*.  While Plaintiff  motions with her right hand towards him, her face is turned to the right, so her gaze is directed towards Officer Stokes, and his gaze is directed toward Plaintiff.  *Id*.  They are within arms' length of each other while looking directly at each other.  *Id.*    No person or object obstructs either's view.  *Id.*

        Officer Stokes' testimony is corroborative of the parties' actions captured by the video. Officer Stokes testified that he saw that the unknown woman in front of Plaintiff successfully used her SmarTrip to pass through the faregate because he saw the arms or "barriers" of the fare gate open when she entered the fare gate first.  SMF ¶¶ 24-28.  He saw one only one cycle of the barriers occur, even though the woman and Plaintiff both exited.  *Id.*  He approached Plaintiff and waved his right hand in front of face, and said, "Ma'am."  SMF ¶ 32. When he was within one foot of her, he told her he needed to see her fare card.  SMF ¶ 33.  She did not give him her SmarTrip card.  SMF ¶  40-1, 45.  Plaintiff made a gesture towards him that he perceived as dismissive, and she continued walking to the station entrance.  SMF ¶ 49.

        When Officer Stokes approached Plaintiff, he believed he had witnessed her failure to pay her fare.  SMF ¶ 42.  He intended to write Plaintiff a citation, his usual practice for fare evasion. SMF ¶ 48.  Officer Stokes possesses the discretion to give Plaintiff a criminal citation, instead of taking her into physical custody.  SMF ¶54.  Officer Stokes cannot write a criminal

citation for a subject who is uncooperative, however, because he needs certain information that only the subject can provide in order to write the citation.  SMF ¶¶ 49-56.

Although Officer Stokes had intended to investigate and write a citation after he stopped Plaintiff, once Plaintiff walked past him after their interaction, Officer Stokes had no option but to arrest her.  SMF ¶¶ 48-55.  Plaintiff was not free to leave and her refusal to stop despite his hand waves directly in front of her face and his attempts to interact with her, gave Officer Stokes additional probable cause to believe she had fare evaded.  *See* Exhibit 11, Report of Charles Key ("Key Report"), pp. 24-5.

Officer Stokes' probable cause to arrest Plaintiff for failing to pay her fare came from seeing Plaintiff:  (a) exit the Fort Totten fare gates in a "piggyback" manner by following closely behind another woman; (b) by occupying the stall of the fare gates at the same time; (c) where the fare gates barriers engaged in only one cycle for Plaintiff and the other woman, so the barrier did not close between the other woman and Plaintiff; and, (d) Officer Stokes was able to observe the barrier of the fare gate closing behind Plaintiff relative to Plaintiff's exit as the second person of the two cycles.  SMF ¶¶ 19-31.

Officer Stokes has been employed as a police officer with WMATA for fourteen years, has been to court in the District of Columbia hundreds of times for criminal citations generally, and at court over a hundred times for citations related specifically to fare evasion.  SMF ¶¶ 10, 15.  Officer Stokes, based on the totality of the circumstances and his training, reasonably believed that he had probable cause Plaintiff had committed the crime of fare evasion upon her exiting the fare gate.

Even assuming Officer Stokes is incorrect and did not (yet) have probable cause the *moment* that he observed Plaintiff exit the fare gates, his observations of her passing through the

fare gate on one cycle allowed him to lawfully detain Plaintiff.  *See Terry v. Ohio*, 392 U.S. 1 (1968).  Officers may, without the Fourth Amendment's warrant requirement, conduct brief, investigative "Terry stops," as long as they have "reasonable articulable suspicion" that criminal conduct has occurred*.  Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, (1968)).  The legal standard for an officer to conduct a *Terry* stop is only a "minimal level of justification."  *INS v. Delgado*,466 U.S. 210, 217 (1984).

Officer Stokes had lawful authority, at a minimum, to *detain* Plaintiff, so that she was not free to leave, at the time she exited the fare gate and Officer Stokes approached her, whether due to probable cause *or* reasonable articulable suspicion.  SMF ¶¶ 41-3; *Terry v. Ohio, supra*.  Officer Stokes reasonably believed he witnessed her failure to pay her fare and intended to investigate by obtaining her SmarTrip card and writing her a citation.  SMF ¶¶  33,41-43, 48.  Every SmarTrip card states on the back that the SmarTrip card is to be presented to an officer when requested.  SMF ¶ 40.

Even assuming, *arguendo,* that Officer Stokes' legal justification only rose to the level of reasonable articulable suspicion at the time he approached Plaintiff, his legal justification reached the level of probable cause after he: (a) waved his right arm several times in front of Plaintiff's face, saying, "Ma'am;" (b) stood within an arm's length of Plaintiff while interacting with her; (c) requested her SmarTrip card; (d) saw that Plaintiff turned her head to  look at him; (e) saw that Plaintiff made a gesture in his direction towards him at the same time she looked at him; (f) saw that Plaintiff failed to stop and give him her SmarTrip card as requested, and (g) saw Plaintiff walk away from him to leave the station. SMF ¶¶ 32-45;  Ex.2, Fort Totten Video, camera X111 at 8:50:58 – 8:51:03.

When Plaintiff walked by him when she was not free to leave, Officer Stoke grabbed Plaintiff's left arm with his left arm and told her she could not leave, and that she was under arrest.  SMF ¶¶ 45-47.  Plaintiff began to yell and pull backwards against Officer Stokes.  *Id*.  Plaintiff's tugging backwards against Officer Stokes' grasp of her arm was strong enough to pull them both to the ground.  SMF ¶¶ 57-60.

The relevant part of the resisting arrest statute states that, "Whoever without justifiable and excusable cause intentionally resists an arrest by an individual who he or she has reason to believe is a law enforcement officer . . . shall be guilty of a misdemeanor [. . .]."  DC Code § 22-405.01.  If conduct goes beyond "speech and mere passive resistance or avoidance, and cross[es] the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty by actively interposing some obstacle that precluded the officer from questioning him or attempting to arrest him,"  the conduct constitutes resisting arrest.  *Gayden v. United States*, 107 A.3d 1101, 1104–05 (D.C. 2014).

The courts of this district have discussed on many occasions the circumstances and facts that rise to the level of probable cause for resisting arrest.  For example, in  *Lash v. Lemke*, the D.C. Circuit explained that the plaintiff resisted arrest because, "there is no genuine dispute regarding Lash's conduct. Multiple video recordings of the episode make perfectly clear that Lash resisted the officers' efforts to arrest him. He pulled his arms free from the officers' efforts to restrain them twice in succession."  *Lash v. Lemke*, 785 F.3d at 6.

In *Campbell v. District of Columbia*, 245 F.Supp.3d 78 (D.D.C. 2017), the court similarly relied on surveillance video to decide whether probable cause existed for an officer to arrest a subject for resisting arrest.  The arresting officer is seen in the video facing the suspect, and then grabbing the suspect's right arm to hold him in place for an investigatory stop.  *Id*. at 88.  The

10

suspect "immediately proceeded to jerk towards the open doorway while forcefully pushing Officer Newton's hands away." *Id*. Another officer helped and both attempted to have the suspect lean over onto a structure of the store, but the suspect continued to resist by using his hands to push the officers away. *Id*. The *Campbell* court held that the suspect's actions gave the officer probable cause to arrest for resisting arrest. *Id.*

Plaintiff's actions, caught be video recordings, unequivocally show that Plaintiff walked by Officer Stokes after turning to look at him from the distance on a few feet. Exhibit 2, Fort Totten Video, camera X111 at 8:51:01 – 8:51:03. When Officer Stokes' stopped Plaintiff from leaving by grabbing her left arm, Plaintiff immediately began forcefully pulling against him, struggling with a force strong enough that Officer Stokes, who initially leaned backwards against Plaintiff's forceful tugging, is pulled forward. *Id*. at camera X111 at 8:51:05 – 8:51:09. Officer Stokes, pulled off-balance, falls toward Plaintiff and onto the ground. *Id.*

Plaintiff's active confrontation and obstruction of Officer Stokes' attempts to arrest her, caught on station video, provided Defendants with probable cause for her arrest for resisting arrest as well as fare evasion.

### D. Plaintiff's Claim Of Unreasonable Seizure Under 42 U.S.C. § 1983 For Lack Of Probable Cause (Count One) Must Be Dismissed.

Plaintiff asserts in her Complaint that Defendants violated her Fourth Amendment right to be free from "unreasonable seizure[ ] when [they] arrested her with excessive force and without probable cause.[3]" Complaint at ¶ 41-2, ECF #1. "To succeed on a claim … under 42 U.S.C. § 1983, a plaintiff must show that the defendant, while acting under color of law, deprived him of the rights, privileges, or immunities secured by the Constitution and laws of the

---

[3] Plaintiff's claim under 42 U.S.C. ¶ 1983 for excessive force is addressed in Section II, *infra.*

United States." *McGovern v. George Washington University,* 245 F. Supp. 3d 167, 176 (D.D.C.

2017). "The Fourth Amendment protects against unreasonable searches and seizures …."

*Virginia v. Moore,* 553 U.S. 164, 168 (2008). Police officers "may perform searches incident to

[an arrest which is constitutional] in order to ensure their safety and [to] safeguard evidence." *Id.*

at 176 (citing *U.S v. Robinson,* 414 U.S. 218, 235 (1973). An arrest is lawful and constitutional

if it is "based on probable cause." *Id.* If "[a] custodial arrest of a suspect [is] based on probable

cause … *that intrusion being lawful*, [means] a search incident to the arrest requires no additional

justification." *Id.*

Objective video and other undisputed evidence prove, as a matter of law, that Defendants

had objective probable cause, as well as a good-faith probable cause to arrest Plaintiff. Although

Sgt. Al-Hinawi was not present to see the fare evasion witnessed by Officer Stokes, when he

arrived at scene, he asked Officer Stokes if Plaintiff was under arrest, which Officer Stokes

confirmed. SMF ¶ 96. "A police officer may rely on a fellow officer's assessment of

circumstances sufficient to warrant a suspect's arrest." *Barnhardt v. District of Columbia*, 723

F.Supp.2d 197, 216 (D.D.C.,2010). *See United States v. Hensley,* 469 U.S. 221, 232 (1985)

(officer could reliance on a flyer or bulletin issued by another police department); *Daniels v.*

*United States,* 393 F.2d 359, 361 (D.C.Cir.1968) (Firsthand knowledge not required by arresting

officer to constitute probable cause). Moreover, Sgt. Al-Hinawi testified that he could see that

Plaintiff was resisting arrest immediately upon his arrival to the scene. SMF ¶¶ 109-110.

The evidence in this matter, video and otherwise, demonstrates that probable cause

existed for Defendant's arrest of Plaintiff. Even *if*, however, the Defendants were mistaken in

their belief that they had probable cause to arrest Plaintiff, they would nonetheless possess

qualified immunity for any alleged Fourth amendment violation related to the arrest. *See* Section

III, *infra.*

Accordingly, Defendants' probable cause to arrest Plaintiff for fare evasion and for

resisting arrest both require the dismissal of Plaintiff's claim of unreasonable seizure under 42

U.S.C. § 1983 for alleged lack of probable cause for her arrest.

### E. Plaintiff's False Arrest/Imprisonment Claim (Count VI) Must Be Dismissed Due To Defendants' Probable Cause to Arrest.

Under District of Columbia common law, the tort of false arrest, and the tort of false

imprisonment are based upon an unlawful detention.  *See, e.g., Bradshaw v. District of

Columbia,* 43 A.3d 318, 322, n.7 (D.C. 2012) (internal citations omitted).  The similarity does

not end there; the analysis used for false arrest and false imprisonment is "practically identical."

*Rice v. District of Columbia,* 774 F.Supp.2d 18, 21 (D.D.C.2011).

"[T]he relevant inquiry in a false arrest defense is not what the actual facts may be but

rather what the officers could reasonably conclude from what they were told and what they saw

on the scene." *Enders v. District of Columbia,* 4 A.3d 457, 470-71 (D.C. 2010).  "The focal point

of the [tort of false arrest] is the question whether the arresting officer was justified in ordering

the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged, and the action

fails." *Dellums v. Powell*, 566 F.2d 167, 175, (D.C. Cir. 1977).

An officer can prove probable cause by either showing the arrest meets the objective

standard for probable cause or by a partially subjective test.  *District of Columbia v. Murphy,* 635

A.2d 929, 932 (D.C.1993).  Under the objective probable cause test, if a police officer meets the

constitutional standard of probable cause to arrest, which is the same objective standard used to

determine probable cause in a criminal proceeding, then the arrest is lawful and the officer has a

complete defense to any false arrest claim  *Id.* at 931–32. The probable cause test is based

entirely on the objective facts.  *Id.*

The partially subjective test for probable cause also provides a police officer's defense to a false arrest claim. *Id.* Under this test, "it will suffice if the officer can demonstrate that (1) he or she believed, in good faith, that his [or her] conduct was lawful, and (2) this belief was reasonable." *Id.*

Officer Stokes and Sgt. Al-Hinawi not only had constitutional probable cause to arrest Plaintiff (s*ee* Section I.C, *supra*), but they also had a good faith, reasonable, belief that their actions were lawful. *See* SMF ¶¶ 18-47; 99, 109-10. Officer Stokes believed that he had probable cause, under the totality of the circumstances, and based upon his 14-years of experience policing fare evasions, at the time that he announced to Plaintiff that she was under arrest; any other reasonable officer confronted with the same facts and knowledge would also believe that believe that probable cause to arrest for fare evasion existed, as well as for resisting arrest. *Id.*; SMF ¶ 15. Plaintiff's claim of false arrest and imprisonment based upon lack of probable cause must fail and judgment granted in favor of Defendants.

**F. Probable Cause And  Her Failure To Make A *Prima Facie* Case Both Defeat Plaintiff's Claim of Intentional Infliction of Emotional Distress**

1. Probable Cause Defeats Plaintiff's IIED Claim

As a matter of law, the existence of probable cause precludes Plaintiff from asserting a claim for intentional infliction of emotional distress ("IIED") based upon her arrest. *Cutchin v. District of Columbia*, 369 F.Supp.3d 108, 128 (D.D.C., 2019). Probable cause existed to arrest Plaintiff, so "the arrest itself cannot form the basis for a claim of extreme or outrageous conduct." *Id.* (quoting *Kotsch v. District of Columbia*, 924 A.2d 1040, 1046 (D.C. 2007)). In *Smith v. United States*, 843 F.3d 509, 513 (D.C. Cir. 2016), the D.C. Circuit held that "[t]he existence of probable cause foreclosed not only [the plaintiff's] false arrest, malicious

prosecution and Fourth Amendment claims, but also his claim of intentional infliction of emotional distress based on his arrest." *Id*.

The Defendants used a reasonable amount of force in effecting Plaintiff's arrest while surrounded by a hostile crowd.   Plaintiff's resisted arrest from the time Officer Stokes grasped her arm and even until she was placed in the transport van. *See* Ex. 2, Ft. Totten videos, cameras X101 and X109.  Her resisting arrest was the causal reason that she and Officer Stokes fell to the ground.   All force used thereafter was neither extreme nor outrageous which precludes a finding in favor of Plaintiff's IIED claim, and judgment must be granted in Defendants' favor.

2.  Plaintiff Fails To Make A *Prima Facie* Claim Of IIED

Plaintiff's claim of IIED is foreclosed by the probable cause the officers had to arrest Plaintiff for fare evasion and resisting arrest, but it is also fails on the merits, due to the lack of evidence to meet the very high standards required of the claim.

To establish a *prima facie* case of IIED, a plaintiff must show: (1) extreme and outrageous conduct of the part of the defendant, which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress.  *Amobi v. D.C. Dep't of Corr.,* 755 F.3d 980, 995 (D.C.Cir.2014) (*quoting Futrell v. Dep't of Labor Fed. Credit Union,* 816 A.2d 793, 808 (D.C.2003)); *see also Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002)); *Cooke–Seals v. District of Columbia,* 973 F.Supp. 184, 188 (D.D.C.1997) (citing *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 935 (D.C.1995))

"Liability will be imposed only for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (internal quotation marks and citations omitted).

In *Hargraves v. District of Columbia*, 134 F.Supp.3d 68, 93–94 (D.D.C., 2015), the court rejected a plaintiff's claim of IIED against officers who used force "during a volatile struggle on a public sidewalk with a suspect whom the officers had reason to believe was in flight, was non-compliant with commands, and had been using marijuana.' *Id*. The *Hargraves* court held that the use of force fell within the "realm of conduct that courts have found to not rise to the level of extreme and outrageous." *Id*.  The *Hargraves* court found examples of that conduct in: a) *Harris v. District of Columbia,* 696 F.Supp.2d 123, 137 (D.D.C.2010), where no extreme or outrageous conduct occurred where the plaintiff alleged a warrantless arrest and that 12 officers searched him with their guns drawn. *Id;* and in b) *Stevens v. Stover,* 727 F. Supp. 668, 672–73 (D.D.C.1990), where the plaintiff's claim of IIED could not lie where it was based upon an officer's use of force which the court had found to be reasonable.  *Id.*

In *Paul v. Howard University*, 754 A.2d 297, 307 (D.C., 2000), the plaintiff alleged that she "suffered from heightened levels of stress, high blood pressure, and disrupted sleep as a result of appellees' allegedly outrageous conduct;" however, the court dismissed plaintiff's claim for failing to meet the difficult standards of this claim.  *Paul*, 754 A.2d at 307. *See Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.1982), *cert. denied,* 459 U.S. 912, 103 S. Ct. 221, 74 L.Ed.2d 176 (1982) ("the defendants' actions must proximately cause the plaintiff emotional upset 'of so acute a nature that harmful physical consequences [are likely] ... to result' ").  The claim must demonstrate conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Jackson v. District of Columbia,* 412 A.2d 948, 957 (D.C.1980) (citation omitted).

Plaintiff's asserted allegations of harm fail here for the same reasons the plaintiffs' claims in *Hargraves* and *Paul* failed.   Plaintiff presents no evidence that Defendants' conduct was so

extreme and outrageous to go outside all bounds of decency; nor did she suffer an emotional

upset of such an acute nature that harmful consequences are the likely result.    Plaintiff claims

that as a result of her arrest, she suffered "severe emotional distress, as reflected in her inability

to take the Metro thereafter." Complaint at Count Five, ¶¶56-57, ECF #1.  These allegations do

not "meet the difficult standards of this claim."   Nor is there evidence that the Defendants'

actions were intentionally or recklessly undertaken to meet the elements of this claim.

"Moreover, merely suffering from mental anguish and stress is insufficient to meet the

third element, which instead requires "the level of severe emotional distress," which is "so acute

... that harmful physical consequences [are likely] to result."  *Hargraves v. District of Columbia*,

134 F.Supp.3d at 93–94 (internal citations omitted). Plaintiff has failed to establish a *prima facie*

case of IIED; therefore, judgment must be granted  in favor of Defendants as a matter of law.

## II.     DEFENDANTS' OBJECTIVELY REASONABLE  USE OF FORCE FORECLOSES PLAINTIFF'S CLAIM OF  EXCESSIVE FORCE UNDER §1983 (COUNT ONE).

Claims based on a police officer's use of "excessive force in the course of making an

arrest, investigatory stop, or other 'seizure' of [one's] person" are "properly analyzed under the

Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor,* 490 U.S. 386,

388 (1989). "The 'reasonableness' of a particular use of force must be judged from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Id.* at 396.   A court must consider such factors as "the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is

actively resisting arrest or attempting to evade arrest by flight."  *Id*.

It is well-settled that "an officer has the authority to use some degree of physical coercion

or threat thereof during the course of an arrest, and not every push or shove, even if it may later

seem unnecessary … violated the Fourth Amendment." *Dormu v. D.C.*, 795 F.Supp.2d 7, 21-22 (D.D.C. 2011) (*citing Rogala v. D.C.,* 161 F. 3d 44, 55 (D.D.C. 1998) (quoting *Graham,* 490 U.S. at 395-97)). "In determining whether an officer's use of force was reasonable … [t]he severity of the injury the plaintiff suffered is also relevant." *Id.* (citing *Wardlaw v Pickett,* 1 F.3d 1297, 1304 n. 7 (D.C. Cir. 1993) ("stating that although the severity of injury is not by itself the basis for deciding whether the force used was excessive … it is a relevant factor.")).  "An officer will be found to have used excessive force only if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." *Garay v. Liriano,* 943 F. Supp. 2d 1, 19 (D.D.C. 2013).

Plaintiff has alleged that Officer Stokes and Sgt. Al-Hinawi violated her Fourth Amendment right under 42 U.S.C. § 1983, when they allegedly used excessive force in arresting her. *See* Complaint, Count One, ECF #1.  Defendants' use of force was  objectively reasonable under the Fourth Amendment analysis set forth in *Graham*, requiring judgment in their favor. *See* Section II.A - C, below.  Under a similar analysis, Defendants' use of force for Plaintiff's common law tort claims of assault and battery was reasonably necessary, and therefore privileged.   *See* Section IV, *infra.*

### A.  Defendants Stokes' and Al-Hinawi's Use of Force Was Objectively Reasonable Based On Video Evidence And Other Undisputed Facts.

A plaintiff's claim that an officer has used excessive force is to be analyzed under the Fourth Amendment and its objective reasonableness standard. *Graham* at 390- 95.  Plaintiff claims that Defendants used excessive force when:

- She was "forced to the ground" or pushed to the ground by Officer Stokes (Compl., ¶ 41, ECF #1; Exhibit 12, January 31, 2020 Report of Randy Foster ("Foster Report"), p. 9);

-  Officer Stokes kneeled on top of her to pin her down and/or applied full body weight and

used "knee strikes" against Plaintiff (Ex. 12, Foster Report, pp. 12-13);

- Officer Stokes engaged in "repeated pushed of [Plaintiff's] face to the ground" (*Id.,* p. 12);

- Officer Stokes and Al-Hinawi used excessive force when handcuffing her by roughly and tightly handcuffing her (Complaint, ¶ 41, ECF #1);

- Officer Stokes displayed and laser-pointed Plaintiff's back with a Taser (*Id*., pp. 13-14);

- Officer Stokes "caused" Plaintiff's breasts to be exposed (*Id.*, pp. 11-12); and,

- Sgt. Al-Hinawi threatened to kill her if she said or "tried" anything (*Id*., pp.13-14).

Plaintiff's claim that Officers Stokes and Al-Hinawi engaged in these acts and used excessive force against her, are without any factual predicate when compared against the video evidence.  The video evidence in this case shows a demonstrably different story than the one Plaintiff alleges in her Complaint and deposition testimony.  Like the D.C. Circuit *in Lash v. Lemke, supra*, this Court is confronted with video evidence that wholly discredits Plaintiff's allegations, rendering her excessive force allegations a "visible fiction."

## B.  Video Evidence Shows That Officer Stokes Did Not Force Plaintiff To The Ground, Place His Knees On Her Back, Or Handle Her Roughly

Plaintiff admits that she fell to the ground because she pulled against Officer Stokes when he would not let her go, which negates her claim that he forced her to the ground.  SMF ¶ 59.  As Officer Stokes falls, his knees are on either side of Plaintiff.  Exhibit 2, Fort Totten Video, camera X111 at 8:51:10; camera X019 at 8:51:00-12. There is no video evidence to support Plaintiff's claims, whether by her or her expert, that Officer Stokes repeatedly pushed Plaintiff's face into the ground; applied his full body weight on her or engaged in knee strikes.  Ex. 11, Key Report, p. 33.  Plaintiff never made a claim in her Complaint, her deposition or in her Answers to Interrogatories, that the officers pushed her face in the ground or effected any knee strikes; the

first time - and only - time it is alleged is in Mr. Foster's report.  *Id.*, p. 33; Exhibit 12, Foster

Report.  The reason Officer Stokes unholstered his Taser to have at the 'low ready' was for

potential defense against the several males threatening him in the crowd.  SMF ¶ 78.   Nor is

there any use of force associated with Plaintiff's allegation that Sgt. Al-Hinawi threatened to kill

her if she "tried anything when he was arresting her; at most, it could be a threat of force.'  Ex.

11, Key Report, p. 33.

The video evidence demonstrates conclusively that Officer Stokes ***did not*** place his knees

or body weight on Plaintiff's back.  The use of knees and body weight, however, have held by

courts to be reasonable in the context of resisting arrest or of evading arrest by attempted flight.

*See, e.g., Armbruster v. Frost*, 962 F.Supp.2d 105, 114 (D.D.C.,2013).  In *Armbruster*, the

District Court reviewed allegations that the plaintiff was brought to the ground by an officer;

while a second officer secured plaintiff's right arm, the first officer placed his knee over her left

arm and then on her back while handcuffing her.  *Id.* The Court held that no excessive force

occurred under the facts of that case.  *Id.*  The Court explained that since the officers had not

been successful in subduing the plaintiff earlier, it was reasonable to take additional action to

restrain the Plaintiff.  *Id.  See Cromartie v. District of Columbia*, 479 F. App'x 355, 357 (D.C.

Cir. 2012) (per curiam) (a plaintiff slammed to the ground and forcibly there kept by officers

while handcuffed falls within realm of the usual amount of force commonly used by officer to

effect an arrest).  *See also* Ex. 11, Report of Charles Key, p. 28.

Mr. Key has opined that the "Defendant officers in this case used minimal force in

dealing with Plaintiff Ulysse.  That force solely consisted of pulling her arms from under her

body to hand cuff her."  Ex. 11, Key Report, p. 29.   Plaintiff needed to be handcuffed because

she was under arrest and because the officers could not see her hands.  SMF ¶105.[4]  The officers testified that they are familiar with what constitutes appropriate force under the law and used the force reasonably necessary to handcuff Plaintiff.  SMF ¶¶ 89, 104, 106, 107.

Both Plaintiff and her expert, Randy Foster, claim the Defendants "exposed" her breasts in a use of force against her; however, neither identifies the means or type of alleged force the officers used relative to that claim.  Nor is there a factual predicate for this claim when the officers' actions are seen on the videos.  Plaintiff has offered her belief that her top started coming down while she was falling to the ground, *i.e*, while she was forcefully and actively resisting arrest by struggling against Officer Stokes grasp of her arm.  SMF ¶ 69; Exhibit 2, Fort Totten Video, camera X111 at 8:51:05 – 8:51:09.  Plaintiff is the cause-in-fact of any displacement of her top that may occurred.

For these reasons, and others contained in this motion, Plaintiff's claims of excessive force must be dismissed as a matter of law and judgment granted in favor of Defendants.

## C.  Plaintiff's Expert's Opinions Regarding Defendants' Use Of Force Should Be Rejected By This Court Because He Misconstrues Legal Standards And Fails To Generate Issues of Material Fact

The opinions offered by Mr. Foster misstate legal standards and fail to take account of established facts in the record. When an expert offers opinions that contain significant deficiencies, courts have held that the expert's opinions should be ignored.

In *Hargraves v. District of Columbia, supra*, the Court discussed the deficiencies in a

---

[4] To the extent that Plaintiff claims injury of a right sprained wrist (SMF ¶ 124),  the video evidence shows that when Plaintiff fell to the ground as a result of her own actions in pulling and struggling against Officer Stokes, her right arm was outstretched in a downward posture, positioned for bracing her fall. Ex. 2, Fort Totten video, Camera X109 at 8:50:09.   Plaintiff's own actions are the cause her injury and were not as result of force used by either MTPD officer. *See* Section V.C*., infra*.

police expert's reports and ruled that the opinions offered were insufficient to generate any genuine dispute of material fact due to the "gaping holes" in his conclusions, because the expert report contained "incorrect or incomplete premise." *Hargraves*, 134 F.Supp.3d at 91. The expert gave an opinion in *Hargraves* "based his finding of excessive force on the faulty premise lacked reasonable suspicion to effect a stop […]" *Id*. at 92.

Here, Mr. Foster claims that it is "best practices" for an officer to engage in a face-to-face communication with a subject, whether or not the officer has probable cause, or is detaining someone, or is just "engaging with a citizen." Exhibit 13, Randy Foster Deposition ("Foster Depo.") at 74:1-80:3; Exhibit 14, Foster Rebuttal Report ("Foster Rebuttal"), p.4. Mr. Foster bases this opinion on MTPD General Order 325, "which makes clear that contacts should be "face-to-face" communications." Ex. 14, Foster Rebuttal, p.4. Mr. Foster appears unaware that the term "contact" in MTPD's General Order 325 is a legal term of art, referring to consensual interactions between police and citizens. Exhibit 8, MTPD General Orders ("MTPD GOs"), GO 325, Contacts, Stops and Frisks, Section III (Definitions)("Contact: a face-to-face communication with an individual who **is free to leave**")(emphasis added). Plaintiff was not free leave when Officer Stokes grabbed her arm. Mr. Foster confuses a consensual encounter with a person who is detained.

Officer Stokes had probable cause had the time of his arrest of Plaintiff, when he announced it to Plaintiff. *See* Section I, *supra*. Although he believes he had probable cause at the time he first approached Plaintiff, even *if* he is mistaken that he possessed it at *that* moment, he had, minimally, reasonable articulable suspicion, which meant Plaintiff was not free to leave. *Id.* As in *Hargraves*, Mr. Foster's report contains incorrect or incomplete premises, and Mr. Foster's failure to address these important facts and circumstances "leaves a gaping hole in his

conclusions." *Hargraves*, 134 F.Supp.3d at 92.  *See Merit Motors, Inc. v. Chrysler Corp.,* 569 F.2d 666, 672 (D.C.Cir.1977) (summary judgment affirmed where the expert's opinion was not supported by the record); *Wannall v. Honeywell Intern. Inc.,* 292 F.R.D. 26, 38 (D.D.C.2013) (expert's opinion  about a "counterfactual, hypothetical situation not present in the case" is insufficient to create a genuine issue of material fact).

An additional glaring deficiency in Mr. Foster's report is that his opinions are offered in the context of "best practices" for a police officer and not the *nationally accepted standard of police practices*.  Ex. 13, Foster Dep. at 74:1-80:3.  See *Casey v. Ward*, 211 F.Supp.3d 107, 115 (D.D.C. 2016)("At most, the chapter's recommendation that restaurants consider the possibility of hiring security guards constitutes a "best practice," which is not a standard of care under District of Columbia law.").  *See also Varner v. District of Columbia,* 891 A.2d 260, 272 (D.C.,2006) ("Aspirational practices do not establish the standard of care which the plaintiff must prove in support of an allegation of negligence.")

There are other glaring deficiencies in Mr. Foster's report, such as Mr. Foster admitting that he has not reviewed or incorporated Plaintiff's deposition testimony into the opinions he is offering.  Ex. 13, Foster Depo. at 88:1-16.  With his lack of review revealed, Mr. Foster was asked whether he was aware that Plaintiff admitted that she fell to the ground as a result of her pulling backwards against Officer Stokes's grasp of her arm (*see* Ex. 4, Pl. Depo. at 100:3-10); in reply, Mr. Foster stated that the deposition testimony "does not affect my opinion" that Officer Stokes pushed Plaintiff to the ground.  Ex. 13, Foster Depo. at 89:1-16.  Mr. Foster's opinions in this matter are contradicted by the video evidence and are the type of "visible fiction" against which *Scott v. Harris* warns.

When ruling on a motion for summary judgment, courts need only consider admissible evidence." *Augustus v. McHugh*, 870 F.Supp.2d 167, 171 (D.D.C., 2012(internal citations omitted). A district court acts appropriately when deciding questions pertaining to the admissibility of expert opinion evidence on a motion for summary judgment. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2nd Cir. 1997). Mr. Foster's opinions with its glaring deficiencies and mis-statements of Fourth Amendment jurisprudence, are inadmissible evidence. As a matter of law, they are insufficient to generate any dispute of material fact and must be disregarded by this Court.

### III.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR PLAINTIFF'S SECTION 1983 CLAIMS.

An officer who allegedly violates a plaintiff's constitutional rights will be shielded by qualified immunity if the officer was not on notice that his or her actions violated "clearly established" rights: "Qualified immunity shields federal and state officials from suit unless a plaintiff alleges facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd,* 563 U.S. 731, 742 (2011)(*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

A district court has the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236, (2009). Should this Court address Plaintiff's allegations starting with the second prong of a qualified immunity analysis, the Court would be guided foremost by case law of the Supreme Court of the United States. The D.C. Circuit has held that the answer to the question of whether a right was 'clearly established,' is controlled by the following hierarchy of case law: "we look to cases from the Supreme Court and this court, as well as to cases from other courts exhibiting a consensus view." *Johnson v. District of*

*Columbia,* 528 F.3d 969, 976 (D.C.Cir.2008). While the Supreme Court has not required that a case be directly 'on point' for a right to be clearly established, existing case law must have placed the constitutional question beyond debate. *Ashcroft v. al–Kidd,* 563 U.S. at 741.

Qualified immunity allows law enforcement officers "breathing room to make reasonable but mistaken judgments' and 'protects all but the plainly incompetent or those who knowingly violate the law." *Id. at* 731 (2011). In an excessive force claim, an officer will be held liable only "if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." *Rogala v. District of Columbia* 161 F.3d at 54. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" is actionable under the Fourth Amendment. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973).

Summary judgment based upon qualified immunity is appropriate if the established law failed to put the officer on notice that his actions would be clearly unlawful. *Saucier v. Katz,* 533 U.S. 194, 202 (2001). As a result, qualified immunity operates to protect an officer when the officer "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen,* 543 U.S. 194, 198, (2004) (*per curiam* )(*citing Saucier,* 533 U.S. at 206). The standard of objective legal reasonableness applies to an officer's actions, in the framework of the legal rules that were clearly established at the time. *Corrigan v. Glover*, 254 F.Supp.3d 184, 193 (D.D.C., 2017) (internal citations omitted). "[W]hile an officer's subjective state of mind is not relevant to the qualified immunity inquiry, the officer's perceptions of the objective facts animating the challenged conduct are." *Id.*

In *White v. Pauly* ___ U.S. ___, 127 S. Ct. 548, 551 (2017), the Supreme Court overturned the Tenth Circuit's decision denying qualified immunity to an officer. *Id*. The

"clearly established law" analysis requires that there be a prior case involving an officer in similar circumstances, acting similarly to Defendants. *Id.* at 552. *White v. Pauly* specifically rejected the Tenth Circuit's reliance on the oft-cited principals of *Tennessee v. Garner*, 471 U.S. 1 (1985) and *Graham v. Connor* for evidence of "clearly established law," because those cases only describe excessive force principles at a general level. *Id.*

In order to prevail on a claim of excessive force and unlawful arrest in violation of 42 U.S.C. § 1983 and successfully challenge Defendants' defense of qualified immunity, Plaintiff must establish that, at the time of the challenged conduct, she was denied a clearly established constitutional right under color of law. *Reichle v. Howard,* 566 U.S. 658, 664 (2012). A right must be sufficiently clear 'that every reasonable officer would [have understood] that what he is doing violates that right.'" *Id.* (citation omitted). Defendants will be shielded by qualified immunity in their arrest of Plaintiff, if a reasonable officer, with the information that Defendants possessed, could have believed Plaintiff's arrest lawful. *Anderson v. Creighton,* 483 U.S. 635 (1987). *Even if* Defendants mistakenly, but reasonably, concluded probable cause was present, they are still entitled to qualified immunity. *Id.*

Defendants incorporate herein by reference their argument in Section I.C s*upra*, which sets forth objective evidence showing probable cause for Plaintiff's arrest. Even assuming that Defendants were mistaken in their assessment that probable cause existed, their belief was reasonable based on the totality of the circumstances. SMF ¶¶ 18-49, 99-101, 109-10. Defendants are therefore entitled to qualified immunity from Plaintiff's § 1983 claim for unlawful seizure due to false arrest.

Courts in this jurisdiction have held more serious uses of force than the minimal force Defendants use in arresting Plaintiff' to be objectively reasonable. In *Cutchin v. District of*

*Columbia*, *supra,* two officers who arrested a subject for fare evasion, pinned the suspect to the ground using an officer's full body weight while squeezing the handcuffs tighter, were held to have used reasonable force. *Cutchin,* 369 F.Supp.3d at 128. Although the plaintiff may have experienced pain or discomfort, that court held that the plaintiff's pain and discomfort did not render the officers' use of force unreasonable. *Id.*

Other similar uses of force have been held lawful. In *Cromartie v. District of Columbia*, 479 F. App'x 355, 357 (D.C. Cir. 2012)(per curiam), the plaintiff was slammed to the ground by officers and forcibly kept there while handcuffed; however, the officers' use of force was held to be no more than the ordinary type of force used by officers in effecting an arrest. *Id.* In *Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C. Cir. 2011), the court ruled that the officers' use of force was not excessive where the plaintiff's arm was pulled behind her back and she was pushed against a stone column. *Id.* In *Wasserman v. Rodacker*, 557 F.3d 635, 641 (D.C. Cir. 2009), the arresting officer applied force to the plaintiff's arm when plaintiff was not resisting or moving; the court held that the force was not excessive because officers have the authority to use some "degree of coercion" to gain compliance in effecting an arrest. *Id.* Finally, in *Goolsby v. District of Columbia*, 317 F.Supp.3d 582, 594-95 (D.D.C 2018), the court found that the arresting officer did not use excessive force when he violently slammed the plaintiff to the ground and twisted the plaintiff's arms in order to handcuff him.

In *Lash v. Lemke,* the D.C. Circuit held that a U.S. Park Police officer who *deployed* her Taser on a subject who was resisting arrest did not use excessive force. The Circuit relied on video evidence in arriving at its decision that no excessive force was used in deploying the

27

Taser.[5]  The plaintiff, Lash, part of the Occupy DC encampment at McPherson Square, had ripped down some notices the officers had posted and then walked away as the officers followed him.  *Id.* at 1-4.*; see also*  Defendants' Memorandum of Law, fn. 7.  Two officers approached and grabbed him from behind; when Lash made two attempts to pull away from their grasp, a third officer deployed her Taser.  *Id.*

The decision in *Lash* turned on the question of whether Lash was resisting arrest at the time he was tased.  *Id.* at 6.  The video evidence showed:  (1) he pulled his arms free from the officers' grasp twice; (2) Lash tried to remain upright when the officers tried to force him to the ground; and, (3) he did not allow the officers to move his arms behind his back to handcuff him. *Id.*  The Circuit Court relied wholly upon the video evidence in its ruling, rejecting as "visible fiction" Lash's protestations that he did not resist arrest.  *Id*. at 7.  The Court held that the force used by Officer Lemke violated no clearly established law and she was entitled to qualified immunity.

Plaintiff  in this matter was also being arrested for a misdemeanor; she also walked away from Stokes, the arresting officer; she also made more than two efforts to pull away from Officer Stokes; she also continued to struggle on the ground; and, she also refused to allow the officers to handcuff her by giving her hands to them willingly.  *See* Ex. 2, Fort Totten video, Camera X109.

The force used by Officer Stokes and Sgt. Al-Hinawi was well below the level of the force of a Taser deployment and was within the accepted standard of what has been held to be objectively reasonable by the Supreme Court and this jurisdiction. The is no clearly established

---

[5] The video footage, described in detail in the Court's opinion, may be seen on the internet at the following IP address:  https://www.youtube.com/watch?v=DrsAgDdbE3I&feature=emb_logo

right that Defendants violated in arresting Plaintiff and Plaintiff's claim for unlawful arrest and excessive force under 42 U.S.C. § 1983 must be dismissed based on their qualified immunity.[6]

## IV.    DEFENDANTS' ACTIONS WERE REASONABLY NECESSARY AND PRIVILEGED, REQUIRING DISMISSAL OF PLAINTIFF'S CLAIMS OF ASSAULT AND BATTERY (COUNT VI).

Assault and battery, although often joined in a single claim, are nonetheless two "conceptually distinct" torts under District of Columbia law. *District of Columbia v. Chinn*, 839 A.2d at 706 n.2 (D.C. 2003).   A battery is an intentional act, causing "harmful or offensive bodily contact." *Id.* (internal citations omitted). An assault is an "intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff." *Id.* at 705 (internal citations omitted).  It is well-settled law that any officer who effects any arrest commits a battery. *Id.* at 706.  Where the officer only uses the amount of force that the officer reasonably believes is necessary, the officer will be "clothed with privilege" for that "battery." *Id.* "This standard is similar to the excessive force standard applied in the Section 1983 context." *Rogala v. District of Columbia*, 161 F.3d at 57.  Consistent with Fourth Amendment standards, the reasonableness of the officer's force must be  judged from the perspective of a reasonable officer on the scene. *Chinn*, 839 A.2d at 706 (internal citations omitted).

---

[6] Plaintiff alleges that Sgt. Al-Hinawi threatened to kill her if she said or tried anything.  Ex. 15, Pl. Am. Answers at #4.  A threat of force is not a use of force.   "However, threats of arrest alone are insufficient to make out an "excessive force" claim under the Fourth Amendment." *Shuey v. Schwab,* No. 3:08–CV–1190, 2010 WL 479938 *4 (M.D.Pa. Feb. 4, 2010). When making a claim of excessive force, if the physical force used is not excessive, then merely adding verbal threats cannot convert it into an unconstitutional use of excessive force. *Hudson v. Goob,* 2009 WL 789924, *12 (W.D.Pa.2009) (citations omitted*)".  Periera v. Lizzio*, 2012 WL 1205750, at *2 (M.D.Pa.,2012)

Defendants incorporate their arguments from Section II, *supra*, regarding the **lack of any evidence to support the alleged force claimed by Plaintiff** (*see* Exhibit 2).  Plaintiff was not pushed or shoved or forced to the ground. SMF ¶ 59.  Plaintiff pulled backwards so forcefully against Officer Stokes' grasp that they both fell to the ground. *Id.*; Exhibit 2, Fort Totten Video, camera X111 at 8:51:05 – 8:51:09.  Because Plaintiff immediately starting yelling while she and Officer Stokes were on the ground, a crowd gathered.  Officer Stokes decided that for his safety and that of Plaintiff's, he would wait to handcuff Plaintiff until backup arrived, for which he called soon after he fell on the on the ground. Exhibit 7, Internal Investigation ("Int. Inv."), Stokes' written statement at # 00014.  As the crowd grew hostile (SMF ¶¶ 70-80), Officer Stokes held a Taser at the "low ready" because the male who had threatened him directly continued to pose a threat.  SMF ¶¶ 76-78; Ex. 7, Int. Inv., Stokes' written statement at # 00014.  During the time that Officer Stokes had her in custody on the ground, Plaintiff continued to struggle and resist. SMF ¶¶ 109-110; Ex. 2, Fort Totten video, Camera X109 at 8:52:54-6.  At no time are Officer Stokes knees on Plaintiff's back, nor does he push he face into the ground.  *Id.*

The video evidence discredits Plaintiff's allegations about Officer Stokes and Sgt. Al-Hinawi's actions, rendering them visible fiction.  Plaintiff insists the officers "exposed' her breasts but has alleged what *actions* the officers undertook to cause the exposure of Plaintiff's breasts.  To the extent that Plaintiff's strapless tube top moved from its intended position, it would foreseeably happen during her struggle on the ground or her struggle against Officer Stokes when he tried to stop her.  Plaintiff herself has asserted that it became displaced when she was falling to the ground  -- while resisting Officer Stokes' arrest. SMF ¶¶ 59-69.

Plaintiff's claim for assault against Sgt. Al-Hinawi also fails as matter of law. She alleges that Sgt. Al-Hinawi told her that "if she said or "tried" anything, she would be killed."[7] Ex. 20, Pl. Am. Answers Interrogatories (Al-Hinawi), # 3. A threat "to cause physical harm" on its own, is not actionable as an assault in the District of Columbia; there must be proof "the person making the threat ... has the *present ability* to carry out the harmful or offensive contact*." Standardized Civil Jury Instructions For The District Of Columbia* § 19.01 (2009) (emphasis added). "[M]ere words, unaccompanied by some act apparently intended to carry the threat into execution, do not put the other in apprehension of an imminent bodily contact, and so cannot make the actor liable for an assault . . .. some overt act is required." Restatement (Second) of Torts § 31 (1965).

The video footage shows that Plaintiff struggled on the ground. Sgt. Al-Hinawi took no actions against Plaintiff other than those that were legally justified, *i.e.*, handcuffing the Plaintiff. Plaintiff must provide evidence that Officer Al-Hinawi took some overt act towards the threat of killing Plaintiff; no such act is apparent in any of the video evidence. Plaintiff's claim of assault against Sgt. Al-Hinawi based on the alleged threat fails as a matter of law.

Defendants have a qualified privilege defense against civil assault and battery under the facts of this case. "District law provides a government actor with a privilege defense to such tort claims when (1) he or she believed, in good faith, that his or her conduct was lawful, and (2) [his or her] belief was reasonable." *Hargraves v. D.C.,* 134 F. Supp. 3d at 90.

Given the video evidence and the other uncontested facts of this case, Officer Stokes' and Sgt. Al-Hinawi reasonably believed their conduct was lawful, as would any objectively reasonable police officer who was similarly situated. SMF ¶¶ 43-4; 90, 105-08. The D.C.

---

[7] Plaintiff has not alleged any specific threat by Officer Stokes.

Circuit has held that an officer is justified in using a Taser against subject who is resisting arrest. *See Lash v. Lemke, supra*.  Officer Stokes would have no reason to construe his acts of straddling Plaintiff, while she continued to struggle against his arrest, and holding his Taser at the low ready in defense of potential threats from a hostile crowd, could be construed as an objectively unreasonable use of force, especially where the D.C. Circuit has previously ruled that officers who tased an arrestee did not violate any clearly established right.  Here, Officer Stokes unholstered a Taser in readiness for *others* who threatened him.  Any claims by Plaintiff that the Taser momentarily passed over Plaintiff's back while Officer Stokes re-holstered the Taser, such momentary passes over Plaintiff's body were inevitable due to the position of their bodies. Nor would the ruling of *Lash v. Lemke* give Officer stokes any reason to believe his conduct was unreasonable.  The way Sgt. Al-Hinawi put handcuffs on Plaintiff is no different in kind or nature to that used by the officers when handcuffing Lash.  *See* fn. 7, *supra*  The Defendants reasonably believed that their actions were lawful.  SMF ¶¶ 55-109.   Any officer confronted with the same facts and circumstances would also believe them to be lawful under established case law.  Plaintiff's claim for assault and battery must be dismissed as a matter of law.

## V.    PLAINTIFF'S NEGLIGENCE CLAIM MUST BE DISMISSED AS A MATTER OF LAW

### A.  Plaintiff Has Pled An Intentional Tort And Not Negligence

A negligence action must be one that is a separate and distinct claim from an intentional tort to survive summary judgment. *Dist. of Columbia v. Chinn,* 839 A.2d 701, 711 (D.C. 2003). In order to maintain both a negligence and battery claim, Plaintiff must plead **"**at least one distinct element, involving an independent breach of a standard of care beyond that of not using excessive force in making an arrest**,** which may properly be analyzed and considered by the jury on its own terms apart from the intentional tort of battery and the defense of privilege."  *Id.* at

707(emphasis added).

In *Chinn*, the plaintiff alleged that officers deliberately inflicted excessive force, and by doing so, breached their duty of care. *Id.* at 711. Due to the plaintiff's failure to produce separate evidence of negligence, without the element of intention, the D.C. Court of Appeals held that his negligence claim should not have been submitted to the jury. *Id.* (emphasis added).

Plaintiff's theory of negligence is that Defendants used intentional force to cause her tube top to become displaced, so that her breasts were exposed. She alleges that she was "unlawfully subjected to excessive force . . . when Defendants threw her to the ground, exposed her bare breast to public view at a crowded Metro station" (Complaint at ¶¶ 9, 12, 16, ECF #1-2).[8] Defendants were negligent by failing to adhere to D.C. Code § 5-123.02,[9] Plaintiff asserts, because Defendants had a duty under  § 5-123.02 to avoid "unnecessary and wanton severity." Complaint at ¶ 49, ECF #1. Plaintiff's negligence theory has several fatal flaws.

First, the duty codified in D.C. Code § 5-123.02  is *not a duty separate and independent from the duty of an officer to not use excessive force;*  the plain meaning of its words speaks to an intentional act of "unnecessary and wanton severity" committed during an arrest. Second, the D.C. Court of Appeal flatly rejected the use of § 5-123.02 in *Chinn,* holding that the allegations "that the defendants committed negligence by violating D.C. Code § 4–176 in using "unnecessary and wanton severity while arresting Plaintiff [10] . . . neither establish a claim separate and distinct from the alleged battery, nor demonstrate the essential elements of a

---

[8] Contrary to Plaintiff's allegations, Sgt. Al-Hinawi was not present when Plaintiff fell to the ground.  Ex. 2, Fort Totten video, camera X111 at 8:51:05 – 8:51:09.

[9] Any officer who uses unnecessary and wanton severity in arresting or imprisoning any person shall be deemed guilty of assault and battery, and, upon conviction, punished therefor.  § 5-123.02, Use of unnecessary or wanton force. D.C. Code § 5-123.02

[10] D. C. Code § 5–123.02 (2001) was formerly D. C. Code § 4–176 (1994). *See  Smith v. District of Columbia*, 882 A.2d 778, 792 (D.C.,2005).

negligence claim." *Chinn,* 839 A.2d at 711.   The D.C. statute as a matter of law is insufficient to meet the requirements of a negligence claim; the statute speaks to acts that sound in intentional tort and inserting "conclusory allegations of negligence" will not remedy its failure to set forth a separate and independent standard of care.  *Id; see also Smith v. District of Columbia* 882 A.2d 778 (2005) (Court of Appeal discounted use of §5-123.02 for negligence claim).

In her Amended Answers to Interrogatories, Plaintiff adds three additional MTPD General Orders to support her negligence claim, asserting the General Orders provide a standard of care which Defendants allegedly breached.  *See* Exhibit 15, Plaintiff's Amended Answers to Interrogatories ("Pl. Am. Answers") at # 5.   Plaintiff asserts that Defendants breached MTPD General Orders 130, 215 and 217 and, as a result, were negligent.  *Id.*; Exhibit 8, MTPD General Orders 130, 215 and 217.  Plaintiff relies one the following excerpts: (1) MTPD GO 130, Use of Force, (officer should "use only the amount of force necessary to affect an arrest, overcome resistance, or protect themselves and/or others from harm"); (2) MTPD GO 217, Ethical Standards of Conduct and Financial Interests (officers should "not employ unnecessary force or violence or engage in cruel, degrading or inhuman treatment of any person"); and (3) MTPD General Order 215, Duties and Responsibilities (officers "will perform their duties in an efficient, courteous and orderly manner employing patience and good judgment at all times."). *Id*.; Ex. 8, General Orders, GO 130, GO 215, GO 217.

The first two General Orders, GO 130 and GO 217, share the same problem that § 5-123.02 has; they restate an officer's duty to not use excessive force.  *See Chinn, supra*.  The third, GO 215, is not a standard of care.  It sets forth aspirational language; it does not describe a duty owed to *Plaintiff,* nor does it state a national standard of care. "Aspirational practices do not establish the standard of care which the plaintiff must prove in support of an allegation of

negligence." *Varner v District of Columbia*, 891 A2.d 260.   Plaintiff cannot identify these General Orders, or any other, as the national standard of care for an officer regarding how to treat resisting suspects whose clothing becomes displaced; only expert testimony can establish that a General Order is the national standard of care.  *Id*. at 267.  Expert testimony is required in negligence cases involving safety, security and crime prevention.  *Id*.  Mr. Foster makes no mention of MTPD General Orders 130, 217 or 215 as a basis for setting a national standard of care for the Defendants alleged *negligence*.  *See* Ex.12, Foster Report; Ex.14, Foster Rebuttal Report.

Plaintiff has failed to identify a separate and independent standard of care that Defendants owed to her, **other than** their duty to not use excessive force.  For these reasons, her negligence claim must be dismissed as a matter of law and judgment granted in favor of Defendants.

### B.  Plaintiff Fails To Identify An Applicable National Standard Of Care.

Plaintiff's negligence claim must be dismissed as a matter of law because she failed to produce admissible evidence regarding a national standard of care as to what duty an officer has when a suspect becomes partially disrobed during an arrest.  Under District of Columbia law, a plaintiff in a negligence action must demonstrate three elements: that there was "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *Girdler v. United States*, 923 F. Supp. 2d 168, 187-88 (D.D.C. 2013) (*quoting Simms v. District of Columbia,* 699 F.Supp.2d 217, 227 (D.D.C.2010). *See also*, *WMATA v. Ferguson,* 977 A.2d 375, 377 (D.C.2009).

Expert testimony is required to establish the standard of care in negligence actions when "the subject in question is so distinctly related to some science, profession, or occupation as to be

beyond the ken of the average layperson." *Briggs v. Wash. Metro. Area Transit Auth.,* 481 F.3d 839, 845 (D.C.Cir.2007) (*quoting District of Columbia v. Arnold & Porter,* 756 A.2d 427, 433 (D.C.2000)) (internal quotation marks omitted).  Courts must assess whether the pertinent standard of care owed by the alleged tortfeasor in the factual context presented is "within the realm of common knowledge and everyday experience" of the jurors or requires the guidance of expert testimony. *Arnold & Porter,* 756 A.2d at 433 (quoting *District of Columbia v. White,* 442 A.2d 159, 164 (D.C. 1982)).  *See also Moore v. District of Columbia*, 79 F.Supp.3d 121, 143 (D.D.C., 2015).

D.C. Court of Appeals has found "generalized references" to standards insufficient. *District of Columbia v. Moreno,* 647 A.2d 396, 400 (D.C. 1994); *District of Columbia v. Carmichael,* 577 A.2d 312, 315-316 (D.C. 1990). The expert must proffer "a specific, articulable (and articulated) standard of care." *Carmichael,* 577 A.2d at 315; *see Phillips v. District of Columbia,* 714 A.2d 768, 773 (D.C. 1998) ("[T]he expert must testify as to *specific. . .* standards and must relate them directly to the defendant's conduct.") "Absent such testimony, the jury will be forced to engage in idle speculation which is prohibited." *Hughes v. District of Columbia,* 425 A.2d 1299, 1303 (D.C. 1981). Articulation of a specific standard is essential "[e]specially in circumstances in which ... the defendant is alleged to have failed to protect the plaintiff from harm." *Varner v. District of Columbia,* 891 A.2d 260, 269 (D.C.  2006).

Plaintiff must produce expert testimony establishing that a national standard of care exists for police officers regarding when and how they should address any partial disrobing of a suspect who is resisting arrest while the officer is in a threatening situation.  In this regard, Plaintiff's expert has produced a report that fails to refer to any negligence standard at all, let alone a national standard on this issue. "It is improper, and inconsistent with proper police practices, to

cause a subject's breasts to become exposed and to refuse to allow the subject to cover herself up." *See* Ex. 12, Foster Report at p. 11.   The basis for this "opinion" is Mr. Foster says,  comes simply from his 25 years of experience and training.  *Id*. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 414 (D.D.C. 2017) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment).

An expert's opinion based on what the expert would do under similar circumstances is insufficient and it is similarly lacking if the expert simply declares that the defendant violated the national standard of care.  *Briggs v. WMATA*, 481 F.3d at 846.  The expert must not only articulate that a standard of care exists, but the expert must also reference the standard of care against which the defendant's actions can be measured.  *Id*. Thus, the expert must relate the standard of care to the practices generally followed by other comparable facilities or to some standard nationally recognized by such units.  *Id*.  Plaintiff's expert has failed to meet this standard and identify a national standard of care that the Defendants' breached.  *See* Section II.C, *supra.*

**C. Plaintiff's Claim Is Barred By Her Own Negligence.**

Under District of Columbia law, a defendant in a negligence case is permitted to raise the defense of contributory negligence, defined as the failure by a plaintiff to act with the prudence demanded of an ordinary reasonable person under similar circumstances. *See, e.g., Byas v. Dorsey*, 192 F.2d 613, 614 (D.C. Cir. 1951); *Scoggins v. Jude*, 419 A.2d 999, 1004-1005 (D.C. 1980); and *Stager v. Schneider*, 494 A.2d 1307, 1311 (D.C. 1985).

A plaintiff's contributory negligence is a complete bar to recovery. *See, e.g., General Elevator Co, Inc. v. District of Columbia*, 481 A.2d 116, 119 (D.C. 1984) (emphasis added.).

Significantly, if a plaintiff's actions or omissions are unreasonable and contribute to the injury then they are deemed to be the proximate cause of the injury. *Martin v. George Hyman Construction Company*, 395 A.2d 63, 69 (D.C. 1978); *Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007) ("A defendant is not liable for a plaintiff's injuries if the plaintiff's own negligence is a proximate cause of the injuries.").

Any degree of plaintiff's contributory negligence acts as a complete bar to recovery. *See In re NBW Commercial Paper Litig.*, 826 F. Supp. 1448, n. 33 (D.D.C. 1992) ("…contributory negligence doctrine, where parties are forbidden any recovery if their acts contributed to the incident *in even the slightest way*.") (emphasis added.); *George Washington Univ. v. Waas*, 648 A.2d 178, 180 (D.C. 1994) (plaintiff barred from recovery under contributory negligence "…even if the defendant was also negligent, as long as the plaintiff's negligence contributed in '*some degree*' to his [or her] injury.")(emphasis added); *W.M. Schlosser Co. v. Maryland Drywall Co.*, 673 A.2d 647 n. 13 (D.D.C. 1996) ("[A] plaintiff's contributory negligence is a complete bar to recovery, as this jurisdiction does not recognize comparative negligence."); *Lynn v. D.C.*, 734 A.2d 168, 172 (D.C. 1999) (A contributory-negligent claimant is completely barred from recovery).  The video evidence in this matter sheds clear light on Plaintiff's own actions, which as a matter of law, were contributorily negligent.  Plaintiff forcefully resisted arrest[11] by violently pulling against Officer Stokes' grasp.   Her resistance pulled him off-balance and towards her as she fell backwards onto the sidewalk, pulling him down as well. SMF ¶¶ 58-60.  Plaintiff then continued to struggle while on the concrete.  These facts are the causal reason for Plaintiff's abrasions, her top becoming displaced, and her being kept on the

---

[11] "It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such an arrest is made by an individual he or she has reason to believe is a law enforcement officer, whether or not such arrest is lawful."  DC Code § 22-405.01

ground at the station surrounded by a crowd for several minutes.  Plaintiff's negligence claim, if not barred as a matter of law based under *Chinn*, would be barred as a matter of law by Plaintiff's contributory negligence.  For these reasons, Plaintiff's negligence claim must be dismissed, and judgment granted in Defendants' favor.

### VI. PLAINTIFF'S CLAIM OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS FAILS WITHOUT EVIDENCE OF NEGLIGENCE

Plaintiff has two paths under District of Columbia law by which she may demonstrate negligent infliction of emotional distress ("NIED") and, as a matter of law, she cannot prevail under either theory. The first theory requires a showing that '(1) the plaintiff was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for [her] own safety, and (4) the emotional distress so caused was serious and verifiable.'" *Harris v. United States VA*, 776 F.3d 907, 915 (D.C. Cir. 2015) (quoting *Rice v. District of Columbia,* 774 F.Supp.2d 25, 33 (D.D.C. 2011)).

Plaintiff's negligence claim rests solely on her allegations that the Defendants inadvertently failed to appreciate that Plaintiff's "bare breasts were exposed to the busy Metro Station and that [Defendants] further exposed her by turning her after handcuffing her." Complaint, Count Three, ECF #1.  Further, Defendants' failure to appreciate that her breasts were exposed created a "zone of danger."  Complaint, ¶ 48.  It is unclear exactly how a "zone of danger," can be created, with or without negligence, by the exposure of Plaintiff' breasts. Contrary to *Chinn*'s holding, Plaintiff cannot shoe-horn intentional acts into the realm of negligence.  Intentional acts cannot be converted into negligent acts by descriptive words.  *See Dist. of Columbia v. Chinn,* Section V.A, *supra*.

Without negligence, Plaintiff cannot prove negligent infliction of emotional distress. *See* Section V.A-B, *supra*. To the extent that any negligence caused Plaintiff's top to become displaced, the negligence was of Plaintiff's making. SMF ¶¶ 59, 69; *see* Section V.C., *supra*.

Under the second path, plaintiff may show that "(1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810-11 (D.C. 2011) (*en banc*).

Plaintiff has pled allegations that pertain to "zone of danger" theory of NIED. Complaint, ¶ 48, ECF #1. Assuming that the second theory is available to Plaintiff despite her failure to allege it, Plaintiff's claim for NIED would still fail because she cannot provide evidence of the Defendants' negligence. She cannot show a relationship between her and the Defendants, or that Defendants undertook obligations to her, that implicated her emotional well-being. *See Aubin v. District of Columbia*, No. 14-02133 (RJL), 2016 WL 509283, at *6 (D.D.C. Feb. 8, 2016) (holding a police officer did not have the requisite relationship with, or undertook an obligation to, an arrestee that implicated the arrestee's emotional well-being). She also fails to demonstrate the required level of emotional distress, which "must be acute, enduring or life-altering." *Hedgepeth*, 22 A.3d at 817; *see, e.g.*, *Sibley v. St. Albans Sch.*, 134 A.3d 789, 797−98 (D.C. 2016) (allegations of emotional trauma, disappointment, and hurt deemed insufficient to support a negligent infliction of emotional distress claim). For these failures, Plaintiff's claim of negligent emotional distress must be dismissed as a matter of law.

## VII.    CONCLUSION

Wherefore, for the reasons stated herein, and for other and such good cause as this Court deems necessary, Defendants Stokes and Al-Hinawi respectfully request that all six counts of Plaintiff's Complaint be dismissed as a matter of law and judgment granted in their favor, and that Plaintiff's Complaint be dismissed with prejudice.

Respectfully Submitted,

/s/ Janice L. Cole
Janice L. Cole #440351
Senior Counsel II
600 5th St., N.W.
Washington, D.C.  20001
(202) 962-2543
(202) 962-2550 (facsimile)

 /s/ Neal M. Janey, Jr._____
Neal M. Janey, Jr., Bar No.:  995449
Senior Counsel
600 Fifth Street, N.W.
Washington, D.C.  20001
Telephone: (202) 962-1067
Facsimile:  (202) 962-2550
E-mail: nmjaney@wmata.com
Counsel for Defendants Stokes and Al-Hinawi